UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

**BRETTE TINGLE**                                    **CIVIL ACTION**

**VERSUS**                                           **NO. 15-626-JWD-EWD**

**TROY HEBERT, IN HIS INDIVIDUAL
CAPACITY AND IN HIS OFFICIAL
CAPACITY AS THE COMISSIONER
OF THE OFFICE OF ALCOHOL AND
TOBACCO CONTROL OF THE LOUISIANA
DEPARTMENT OF REVENUE, ET AL.**

### RULING ON DEFENDANT'S MOTION FOR PROTECTIVE ORDER OR, ALTERNATIVELY, MOTION TO STAY PROCEEDINGS

Before the Court is a Motion for Protective Order or, Alternatively, Motion to Stay Proceedings (the "Motion") filed by defendant Troy Hebert, in his individual capacity and in his official capacity as the former Commissioner of the Louisiana Office of Alcohol and Tobacco Control ("ATC").[1] The Motion is opposed[2] and Hebert has filed a Reply.[3] In the Motion, Hebert seeks a protective order prohibiting Plaintiff's inquiry into certain matters involving Hebert and the Louisiana Oyster House LLC d/b/a Star Steak and Lobster restaurant ("Star Steak and Lobster"), Sarah Palmer and/or Chris Young.[4] Alternatively, Hebert seeks a stay of this case until the criminal charges that could be brought against him, based on an FBI investigation concerning public corruption allegations, have prescribed.[5]

---

[1] R. Doc. 57.
[2] R. Doc. 73.
[3] R. Doc. 76.
[4] R. Doc. 57 at 1.
[5] *Id*.

For the reasons that follow, the Motion is **GRANTED in part and DENIED in part.**[6] As it relates to the request for a protective order, the Motion is **GRANTED** and Plaintiff is prohibited from seeking information regarding Sarah Palmer, Chris Young and Star Steak and Lobster during the discovery process. Whether questioning regarding these issues will be permitted at trial is an issue reserved for consideration by the district judge. With respect to Hebert's alternative request for a stay of these proceedings, the Motion is **DENIED as moot**.

I. **Background**

On September 16, 2015, Plaintiff filed a Complaint in this Court against Hebert, asserting claims of retaliation under 42 U.S.C. §§ 1981 and 1983, invasion of privacy under the United States and Louisiana Constitutions, and defamation under Louisiana law.[7] In the Complaint, Plaintiff alleges that he was terminated from his employment with ATC by Hebert in retaliation for his participation as a witness in race discrimination charges filed by three of his former co-workers against the ATC with the Equal Employment Opportunity Commission ("EEOC") and his participation as a witness in the ensuing litigation against the ATC and Hebert in that matter, as well as his participation as a witness in litigation against the Louisiana Department of Revenue brought by another former co-worker, Randall Kling, who claims Hebert retaliated against Kling by terminating Kling's employment with the ATC after Kling complained of Hebert's discriminatory practices at the ATC.[8]

On January 30, 2017, Hebert filed the instant Motion, seeking a protective order prohibiting Plaintiff's inquiry into certain matters involving Hebert and Star Steak and Lobster, Sarah Palmer

---

[6] "The decision by a magistrate judge as to discovery issues, specifically a ruling on a motion for protective order, is a non-dispositive matter." *Partin v. Wal-Mart Louisiana, LLC*, 2011 WL 441474, at *1 (W.D. La. Feb. 1, 2011). *See, Plaquemines Holdings, LLC v. CHS, Inc.*, 2013 WL 1344570, at *2 (E.D. La. April 3, 2013) ("The ruling by which this Court denied Plaquemines [sic] motion for a protective order is a nondispositive pretrial matter.").
[7] R. Doc. 1.
[8] R. Doc. 1 at 1-2, 13.

and/or Chris Young.⁹ Hebert asserts that during his December 13, 2016 deposition, Plaintiff's counsel asked Hebert to identify documents concerning Star Steak and Lobster and asked Hebert about Sarah Palmer, a person connected to Star Steak and Lobster, both seemingly related to allegations made by Palmer that Hebert extorted sexual favors from her in exchange for his assistance with alcohol licensing issues with the restaurant.¹⁰ Hebert asserts that news reports show the FBI launched an investigation of Palmer's claims.¹¹ In response to this line of questioning, Hebert invoked his rights under the Fifth Amendment of the United States Constitution.¹² Hebert also asserts that Plaintiff's counsel questioned him regarding documents concerning Chris Young, a New Orleans attorney who represented bars and restaurant owners before the ATC and who was a lobbyist for the Beer Industry League of Louisiana.¹³ According to Hebert, news reports show that the FBI was expanding its investigation of Hebert to include allegations that Hebert illegally engaged in a scheme to direct business to Young.¹⁴

Hebert argues that any questions regarding Hebert's interactions with Sarah Palmer, Star Steak and Lobster and/or Chris Young are not relevant to this case and were aimed solely to embarrass, harass or generally discredit Hebert.¹⁵ As such, Hebert asserts Plaintiff should be forbidden and foreclosed from inquiring into these matters either during discovery or at trial under Fed. R. Civ. P. 26(c)(1)(D).¹⁶ Hebert points out that Palmer's allegations against Hebert were

---

⁹ R. Doc. 57.
¹⁰ R. Doc. 57-1 at 1-2 (*citing* R. Doc. 57-4).
¹¹ R. Doc. 57-4.
¹² R. Doc. 57-1 at 2 (*citing* R. Doc. 57-2).
¹³ R. Doc. 57-1 at 2 (*citing* R. Doc. 57-5).
¹⁴ R. Doc. 57-1 at 2 (*citing* R. Doc. 57-4).
¹⁵ R. Doc. 57-1 at 1-2.
¹⁶ Fed. R. Civ. P. 26(c)(1)(D) provides, in pertinent part, that:

> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending—or as an alternative on matters relating to a deposition, in the court for the district where the deposition will be taken. . . . The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense,

made in January 2016, after Plaintiff was terminated from the ATC and after this lawsuit was filed.[17] Hebert asserts that Plaintiff did not participate in any issue involving Palmer and/or Star Steak and Lobster and that there is no mention of Palmer or Star Steak and Lobster in the Complaint.[18] According to Hebert, the licensing renewal documents presented during his deposition were not previously produced by Plaintiff and are not contained in Plaintiff's initial disclosures.[19]

Hebert similarly argues that the issues concerning Chris Young are not part of this lawsuit and are irrelevant to, and have no bearing upon, whether Hebert allegedly retaliated against Plaintiff for Plaintiff's participation in the race discrimination charges and lawsuits filed by three former ATC employees. Instead, Hebert asserts the questions and discovery sought concerning Chris Young and/or Sarah Palmer were meant to embarrass and harass Hebert. Hebert contends that he was well within his rights to invoke his Fifth Amendment privilege, despite the fact that he has not been indicted for any crime and there is no active criminal case against him, since Hebert has been under investigation by the FBI and could face indictment and criminal prosecution if he provides answers to these questions.[20] Because the issues concerning Young, Palmer and Star Steak and Lobster are not relevant to Plaintiff's claims of retaliation, invasion of privacy, and defamation and Hebert has invoked his Fifth Amendment privilege, Hebert asserts that the Court should enter a protective order pursuant to Fed. R. Civ. P. 26(c)(1)(D) forbidding inquiry into the privileged matters.

---

including one or more of the following: . . . forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters . . . .

[17] R. Doc. 57-1 at 3 (*citing* R. Doc. 57-4).
[18] R. Doc. 57-1 at 3 (*citing* R. Doc. 1).
[19] *See*, R. Doc. 57-3; R. Doc. 57-8.
[20] R. Doc. 57-1 at 4.

Alternatively, if the Court concludes that the information sought by Plaintiff is relevant, Hebert asserts that the Court should stay the case until the prescriptive period for criminal prosecution on the public corruption allegations has expired.[21] Hebert claims that he cannot fully defend himself in this civil case by explaining his position concerning Young, Palmer and Star Steak and Lobster while the threat of criminal prosecution is looming. Hebert also asserts that he would be severely penalized and prejudiced if he is forced to invoke his Fifth Amendment right and not directly answer these types of questions in front of a jury. Hebert argues that if Plaintiff intends to pursue this evidence, then Plaintiff must agree to a stay so that Hebert can defend himself without threat of criminal prosecution. Hebert maintains that the stay would only need to be in place until the time limit for any criminal prosecution has expired. Hebert further asserts that there would be no prejudice to Plaintiff because the delay would be minimal and caused by the line of questioning pursued by Plaintiff's counsel. Hebert also contends that a limited stay would not unduly interfere with the Court's management of the docket because the Court can order an administrative closure of the case, which acts as a postponement rather than a termination of the matter, and the case can be reopened at the request of the parties or on the Court's own motion.[22]

In opposition, Plaintiff asserts that his counsel attempted to question Hebert during Hebert's deposition about an August 26, 2015 notice of permit violation for Star Steak and Lobster issued by Hebert, and about Sarah Palmer, the person believed to own or operate the establishment.[23] Plaintiff claims that his counsel attempted to question Hebert about Hebert's relationship with Palmer because Hebert's counsel had previously questioned Hebert about Hebert's infidelity, thus putting the matter at issue.[24] Plaintiff asserts that his counsel attempted

---

[21] R. Doc. 57-1 at 5-7.
[22] R. Doc. 57-1 at 7.
[23] R. Doc. 73 at 1.
[24] R. Doc. 73 at 1-2 (*citing* R. Doc. 73-1 at 3-4).

to ask Hebert about a November 18, 2015 email from ATC Executive Officer Judy Pontin, Chris Young's sister, to Sarah Palmer about her alcoholic beverage renewal application, but Hebert exercised his Fifth Amendment privilege and refused to answer the questions. Plaintiff further asserts that his counsel attempted to question Hebert about two emails between ATC attorney Jessica Starns and Chris Young regarding a confidentiality agreement concerning an incident that occurred at The Bulldog bar in Baton Rouge, but Hebert again asserted his Fifth Amendment privilege and refused to respond to the questions.[25]

Plaintiff argues that the information sought regarding Palmer, Young and Star Steak and Lobster is admissible under Fed. R. Civ. P. 404(b)(2) as evidence of plan and intent to prove that Hebert intended to use his public office to benefit himself to the detriment of ATC employees like Anthony Augustine[26] and Plaintiff, and regulated persons such as Sarah Palmer, whose livelihoods were dependent on the ATC.[27] Plaintiff also asserts that because defense counsel believed her questioning of Hebert about infidelity was relevant to the defense, counsel has opened the door to the Plaintiff asking about the same issue.[28] Plaintiff further claims that Hebert has not shown good cause for the issuance of a protective order because the news reports relied upon by Hebert were nearly eleven months old at the time of his deposition and the evidence presented by Hebert shows that the FBI investigation regarding Hebert and his ties to Chris Young has been concluded.[29] Plaintiff also asserts that if Hebert is allowed to plead the Fifth Amendment in response to

---

[25] R. Doc. 73 at 2.
[26] According to Plaintiff, Augustine is an African American ATC agent who was assigned to investigate the incident that occurred at The Bulldog bar in Baton Rouge. (R. Doc. 73 at 4). Plaintiff claims that Augustine's name came up during Plaintiff's deposition testimony in another matter currently pending before the Court, *Gilmore, et al. v. Office of Alcohol and Tobacco Control of the Louisiana Dept. of Revenue*, No. 14-434-JWD-EWD ("*Gilmore* matter"). Plaintiff alleges that during his deposition in the *Gilmore* matter, he testified that he, "never heard Hebert yell at anyone like he did at Anthony Augustine over the Bulldog investigation." (R. Doc. 73 at 5) (*citing* R. Doc. 73-2 at 7-8). The Court notes that the portion of Plaintiff's deposition testimony cited to in the Opposition does not contain any testimony regarding Anthony Augustine.
[27] R. Doc. 73 at 4.
[28] R. Doc. 73 at 6.
[29] R. Doc. 73 at 6.

6

questions regarding Palmer and Young, then Plaintiff is entitled to an adverse presumption as to responses Hebert would otherwise provide.[30] Finally, Plaintiff alleges there is no valid basis for a stay of this matter because there is no overlap between this matter and a criminal matter, as there is no related criminal proceeding and no evidence that an indictment is imminent because Hebert's own evidence shows the FBI investigation into Hebert and any ties to Young has been concluded.[31] Plaintiff points out that Hebert has not cited any criminal charges for which he may be indicted or provided a prescriptive period as to any possible criminal charge, nor has Hebert requested a specific length of time for the stay sought. As such, Plaintiff urges the Court to deny the Motion. Plaintiff also seeks the costs incurred in responding to the instant Motion, including reasonable attorney's fees.[32]

In reply, Hebert re-urges his arguments regarding why the information sought by Plaintiff's counsel is not relevant to the claims or defenses raised in this case.[33] Hebert further asserts that the information sought is not relevant to the Plaintiff's claims because Hebert's counsel did not question Hebert regarding infidelity. Hebert insists that Hebert's counsel questioned Plaintiff about Plaintiff's sexual relationships with multiple female ATC employees while Plaintiff was married because Plaintiff's counsel referred Plaintiff for a psychological evaluation and the issue was raised in the resulting psychological report.[34] Hebert points out that Plaintiff does not contest the fact that the issue regarding Star Steak and Lobster's license occurred after Plaintiff left the ATC for his sick and/or military leave and that Plaintiff had no direct involvement in that issue. Hebert also asserts that there is no connection between Anthony Augustine's investigation of The

---

[30] *Id.* at 7 (citing *Baxter v. Palmigiano*, 425 U.S. 308, 318, 96 S.Ct. 1551, 1558, 47 L.Ed.2d 810 (1976)).
[31] R. Doc. 73 at 9.
[32] *Id.* at 10.
[33] R. Doc. 76.
[34] *See*, R. Doc. 76-2. The Court notes that the portion of the psychological report provided by Hebert only mentions that Plaintiff divorced his first wife in 2007 and that Hebert refused to re-hire Plaintiff because Plaintiff had made "sexual remarks." (R. Doc. 76-2 at 3-4).

Bulldog in January 2012 and Plaintiff's retaliation claim, as the only "protected activity" under Title VII or § 1981 that Plaintiff engaged in was providing statements with the EEOC charges submitted by three former ATC co-workers.[35] Hebert further asserts that he has a reasonable basis to fear prosecution based on the FBI's investigation of him because even though the investigation has been closed, an FBI agent testified in the criminal case against Chris Young that the agent had reviewed text messages and conducted interviews regarding the public corruption investigation *after* the investigation had been officially closed.[36] Hebert further alleges that Plaintiff admits Plaintiff initiated at least five calls to that FBI agent in 2012 to report allegations that Hebert was involved in payroll fraud.[37] Thus, Hebert argues that not only does he have a reasonable basis for believing the FBI investigated him, continued its investigation after it had been officially closed, and could easily reopen its investigation and prosecute him, but Hebert has a reasonable basis to believe that Plaintiff would report to the FBI anything Hebert said in a deposition.

**II.   Law and Analysis**

Under the Federal Rules of Civil Procedure, parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). "For purposes of discovery, relevancy is construed broadly to encompass 'any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue related to the claim or defense

---

[35] R. Doc. 76 at 2-3 (*citing* R. Doc. 76-1 at 12-15).
[36] R. Doc. 76 at 4 (*citing* R. Doc. 76-4).
[37] R. Doc. 76 at 5.

8

of any party.'" *Fraiche v. Sonitrol of Baton Rouge*, 2010 WL 4809328, at *1 (M.D. La. Nov. 19, 2010) (quoting *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991); Fed. R. Civ. P. 26(b)(1)); *See*, *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S. Ct. 2380, 2389, 57 l.Ed.2d 253 (1978) (same). However, the court must limit the frequency or extent of discovery if it determines that, "the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C)(iii).

Federal Rule of Civil Procedure 26(c) allows the court to issue a protective order after a showing of good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "Rule 26(c)'s requirement of a showing of good cause to support the issuance of a protective order indicates that '[t]he burden is upon the movant to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements.'" *In re Terra Int'l, Inc*., 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

The Court finds that Hebert has carried his burden of establishing good cause for the issuance of a protective order to prevent Plaintiff from inquiring into unrelated matters involving Sarah Palmer, Chris Young and Star Steak and Lobster during the discovery process. The Federal Rules of Civil Procedure permit discovery of "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). As Hebert points out, the information sought by Plaintiff's counsel regarding Palmer, Young and Star Steak and Lobster is completely unrelated to the claims of retaliation, invasion of privacy, and defamation alleged in Plaintiff's Complaint[38] and Amended and Supplemented Complaint.[39]

---

[38] R. Doc. 1.
[39] R. Doc. 62.

9

There is no mention of Palmer, Young or Star Steak and Lobster in either the Complaint[40] or the Amended and Supplemented Complaint,[41] and Plaintiff's initial disclosures, provided by Hebert, do not list Palmer, Young or any representative of Star Steak and Lobster as potential witnesses.[42] Plaintiff's initial disclosures also do not list as potential exhibits the documents that Plaintiff's counsel attempted to question Hebert about during his deposition, namely an August 26, 2015 notice of permit violation for Star Steak and Lobster, a November 18, 2015 email from ATC Executive Officer Judy Pontin to Sarah Palmer about Palmer's alcoholic beverage renewal application, and two emails between ATC attorney Jessica Starns and Chris Young regarding a confidentiality agreement concerning the incident that occurred at The Bulldog bar in Baton Rouge.[43]

The case relied upon by Plaintiff to support his argument that the information sought regarding Palmer, Young and Star Steak and Lobster is admissible under Federal Rule of Evidence 404(b)(2) as evidence of plan and intent is clearly distinguishable from the case at bar. In *Goldsmith v. Bagby Elevator Co., Inc.*, the Eleventh Circuit Court of Appeals concluded that the district court did not abuse its discretion by admitting evidence of discrimination against the plaintiff's coworkers because the evidence "was otherwise admissible to support Goldsmith's claim of a hostile work environment and to rebut the defenses of Bagby Elevator." 513 F.3d 1261, 1285 (11th Cir. 2008). Specifically, the court found the evidence admissible under Fed. R. Evid. 404(b) to prove the intent of Bagby Elevator to discriminate and retaliate against its employees, and admissible under Fed. R. Evid. 402 as relevant to the plaintiff's claim of a hostile work environment. *Id*. at 1286. Unlike the plaintiff in *Goldsmith*, however, Plaintiff has not alleged

---

[40] R. Doc. 1.
[41] R. Doc. 62.
[42] R. Doc. 57-8 at 1-5.
[43] R. Doc. 57-8 at 5-8; *See*, R. Doc. 73 at 1-2; R. Doc. 57-3; R. Doc. 57-6.

that Hebert or ATC created a hostile work environment or engaged in a pattern and practice of retaliation and race discrimination.[44] *See*, *Goldsmith*, 513 F.3d at 1274-75. In addition, the information sought by Plaintiff's counsel does not relate to any alleged discrimination or retaliation taken against Plaintiff's coworkers at the ATC. The information sought regarding Palmer, Young and Star Steak and Lobster appears to relate solely to the FBI investigation of Hebert regarding allegations of public corruption. It is not clear what relevance that information may have to Plaintiff's claims of retaliation, defamation, and invasion of privacy. Thus, the Court finds *Goldsmith* inapplicable to the facts of this case.[45]

The Court further finds that the information sought by Plaintiff's counsel is unrelated to any of the defenses raised in Hebert's Answer to the Complaint[46] or in the Answer and Affirmative Defenses to Plaintiff's Amended and Supplemental Complaint, filed by Hebert and ATC.[47] While Plaintiff claims that Hebert's counsel "opened the door" to questioning regarding Sarah Palmer by questioning Hebert about infidelity, Plaintiff did not provide any information regarding the scope of any such questioning. The portion of the deposition transcript provided by Plaintiff shows that when Plaintiff's counsel asserted that Hebert's counsel had opened the door to this line of questioning by asking Hebert about infidelity, Hebert's counsel responded, "Absolutely not. I asked him about infidelity, but I didn't, quote/unquote, 'open the door.' He's asserted his Fifth amendment [sic] right. That's fine. If you want to bring it to the judge, we can, but you cannot harass him into trying to answer the question."[48] The evidence submitted by Hebert further shows

---

[44] R. Docs. 1, 62.
[45] Because the Court finds the information sought regarding Palmer, Young and/or Star Steak and Lobster bears no relevance to the claims or defenses of the parties in Plaintiff's retaliation case, the Court need not address Hebert's argument that the information is protected from discovery because Hebert has exercised his rights under the Fifth Amendment.
[46] R. Doc. 15.
[47] *See*, R. Doc. 69.
[48] R. Doc. 73-1 at 3-4.

that Hebert's counsel questioned Plaintiff about Plaintiff's infidelity during Plaintiff's deposition, but Plaintiff's counsel did not object to that line of questioning.[49] The information sought regarding Plaintiff's prior relationships also overlaps with some of the information contained in the psychological report prepared at the request of Plaintiff's counsel, such as Plaintiff's divorce from his first wife and how he met his current wife.[50] As such, there is no evidence before the Court that suggests the information sought regarding Palmer, Young and Star Steak and Lobster bears any relevance to the claims or defenses raised by Plaintiff or Hebert in this case.

The Court likewise rejects Plaintiff's argument that the evidence regarding Chris Young is relevant to support Plaintiff's claim in his retaliation case that he had a good faith belief that Hebert was harassing African American employees at ATC. To the extent Plaintiff argues information about Chris Young's involvement with The Bulldog somehow has to do with Hebert's treatment of another African American ATC employee, Anthony Augustine, as noted above, there is no evidence of Plaintiff's testimony regarding Anthony Augustine in the record.

Accordingly, good cause exists to issue a protective order prohibiting Plaintiff's counsel from inquiring into issues concerning Hebert and Sarah Palmer, Chris Young and Star Steak and Lobster during the discovery process. Hebert's request for a stay of this matter is denied as moot. Plaintiff's request for the reasonable expenses incurred in responding to the instant Motion is also denied.[51]

### III. Conclusion

For the reasons set forth herein, Hebert's Motion for Protective Order or, Alternatively, Motion to Stay Proceedings[52] is **GRANTED in part and DENIED in part.** As it relates to the

---

[49] R. Doc. 76-1 at 2-6.
[50] R. Doc. 76-2 at 3-4.
[51] R. Doc. 73 at 10.
[52] R. Doc. 57.

request for a protective order, the Motion is **GRANTED** and Plaintiff is prohibited from seeking information regarding Sarah Palmer, Chris Young and Star Steak and Lobster during the discovery process. Whether questioning regarding these issues will be permitted at trial is an issue that is hereby reserved for consideration by the district judge.

With respect to Hebert's alternative request for a stay of these proceedings, the Motion is **DENIED as moot**.

Signed in Baton Rouge, Louisiana, on May 15, 2017.

                **ERIN WILDER-DOOMES**
                **UNITED STATES MAGISTRATE JUDGE**