# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**BRETTE TINGLE**

**VERSUS**

**TROY HEBERT, IN HIS INDIVIDUAL
CAPACITY AND IN HIS OFFICIAL
CAPACITY AS THE COMMISSIONER
OF THE OFFICE OF ALCOHOL AND
TOBACCO CONTROL OF THE LOUISIANA
DEPARTMENT OF REVENUE, ET AL.**

**CIVIL ACTION**

**NO. 15-626-JWD-EWD**

## RULING AND ORDER ON PLAINTIFF'S MOTION TO COMPEL DEFENDANT TROY HEBERT'S RESPONSES TO PLAINTIFF'S SECOND REQUESTS FOR PRODUCTION OF DOCUMENTS

Before the Court is a Motion to Compel Defendant Troy Hebert's Responses to Plaintiff's Second Requests for Production of Documents (the "Motion"), filed by plaintiff Brette Tingle.[1] The Motion is opposed by defendant Troy Hebert ("Hebert").[2] In the Motion, Plaintiff seeks to compel Hebert to produce documentary information regarding Hebert's net worth, which Plaintiff asserts is relevant to Plaintiff's claims for punitive damages pursuant to 42 U.S.C. § 1983.[3] For the reasons that follow, the Motion is **GRANTED in part**.[4] Plaintiff's request for reasonable expenses and attorney's fees under Fed. R. Civ. P. 37(a)(5)(A) is **DENIED.**

---

[1] R. Doc. 58.
[2] R. Doc. 72.
[3] R. Doc. 58-1 at 1.
[4] "The decision by a magistrate judge as to discovery issues, specifically a ruling on a motion for protective order, is a non-dispositive matter." *Partin v. Wal-Mart Louisiana, LLC*, 2011 WL 441474, at *1 (W.D. La. Feb. 1, 2011). *See, Plaquemines Holdings, LLC v. CHS, Inc.*, 2013 WL 1344570, at *2 (E.D. La. April 3, 2013) ("The ruling by which this Court denied Plaquemines [sic] motion for a protective order is a nondispositive pretrial matter.").

## I. Background

On September 16, 2015, Plaintiff filed a Complaint in this Court against Hebert, asserting claims of retaliation under 42 U.S.C. §§ 1981 and 1983, invasion of privacy under the United States and Louisiana Constitutions, and defamation under Louisiana law.[5] In the Complaint, Plaintiff alleges that he was terminated from his employment with ATC by Hebert in retaliation for his participation as a witness in race discrimination charges filed by three of his former co-workers against the ATC with the Equal Employment Opportunity Commission ("EEOC") and his participation as a witness in the ensuing litigation against the ATC and Hebert in that matter, as well as his participation as a witness in litigation against the Louisiana Department of Revenue brought by another former co-worker, Randall Kling, who claims Hebert retaliated against Kling by terminating Kling's employment with the ATC after Kling complained of Hebert's discriminatory practices at the ATC.[6]

On January 30, 2017, Plaintiff filed the instant Motion, seeking to compel Hebert to respond to Plaintiff's Second Request for Production of Documents.[7] Plaintiff propounded his Second Request for Production of Documents upon Hebert on December 23, 2016, which seeks the following documents:

1. Troy Hebert's federal and state income tax returns for the years 2010-2016, inclusive.
2. Any and all documents in the possession, custody or control of Troy Hebert reflecting all or part of the following information:
    a. any and all assets owned by Troy Hebert at this time;
    b. the fair market value of each asset owned by Troy Hebert at this time; and
    c. *if any assets owned by Troy Hebert at this time are co-owned and/or subject to any mortgages or other encumbrances, please provide the name and address of*

---

[5] R. Doc. 1.
[6] R. Doc. 1 at 1-2, 13.
[7] R. Doc. 58 (*See,* R. Doc. 58-2).

> *each co-owner and the name and address of the holder of each mortgage or other encumbrance.*[8]

Hebert objected to both requests on the same grounds, asserting that: (1) information regarding his net worth is not at issue because he has been provided a defense and indemnity to all claims in this case by the State of Louisiana pursuant to La. R.S. 13:5108; (2) the requests are premature until the pretrial conference and/or trial after the Court finds there is sufficient evidence warranting an award for punitive damages; and (3) the requests are overly broad, vague, invasive, and unreasonably burdensome.[9]

Plaintiff claims that the information sought regarding Hebert's net worth is relevant to Plaintiff's claim for punitive damages under 42 U.S.C. § 1983.[10] Plaintiff asserts that a majority of federal district courts permit pretrial discovery of a defendant's financial status without requiring the plaintiff to establish a prima facie case on the issue of punitive damages.[11] Plaintiff points out that in *Jackson v. Wilson Welding Services, Inc.*, the magistrate judge ordered discovery of the defendant's net worth information from 2008 through 2011, where the plaintiff began employment with the defendant in June 2008.[12] Here, Plaintiff asserts that he was a longtime employee of the ATC, Hebert became ATC Commissioner in November 2010, and the alleged retaliation and other adverse employment actions occurred in 2012. As such, Plaintiff claims that Hebert's annual net worth information should be produced from 2010 through the present. Plaintiff also asserts that his counsel was willing to agree to a protective order and was willing to

---

[8] R. Doc. 58-2 at 4 (emphasis in original).
[9] R. Doc. 58-3.
[10] R. Doc. 58-1 at 1.
[11] R. Doc. 58-1 at 2 (citing *Jackson v. Wilson Welding Services, Inc.*, 2011 WL 5024360, at *2 (E.D. La. Oct. 20, 2011); *Alvarez v. Aldi (Texas) LLC*, 2014 WL 3624929 (N.D. Tex. July 22, 2014)).
[12] R. Doc. 58-1 at 2 (citing *Jackson*, 2011 WL 5024360, at *4).

narrow the discovery requests if Hebert provided a reasonable basis for doing so, and that Hebert's counsel responded by agreeing to provide only Hebert's W-2 forms.[13]

In opposition, Hebert asserts that the discovery requests seeking information regarding his net worth are premature at this time and that the information requested is irrelevant and disproportionate to the needs of this case.[14] While acknowledging that information regarding a defendant's net worth in an employment case may be relevant and discoverable to evaluate a plaintiff's punitive damages claim, Hebert asserts that he should not be required to produce information regarding his net worth until the pretrial conference or the trial in this matter, after the Court finds there is sufficient evidence supporting Plaintiff's claim for punitive damages.[15] Hebert further asserts that the request for his tax returns from 2010 through 2016 is overly broad, invasive, and unreasonably burdensome, especially because a defendant's net worth for punitive damages purposes is limited to his current financial condition and net worth.[16] Hebert also claims that production of the complete tax returns would contain his wife's private financial information, which has no relevance on this case or any damages awarded.[17] Lastly, Hebert asserts that the discovery requests for documents regarding "any and all assets" he owns, as well as their fair market value, and information as to any "mortgages or other encumbrances" is vague, overly broad, invasive, and unreasonably burdensome because it appears to cover all of Hebert's belongings, clothes, furniture, and other personal effects.[18] As such, Hebert asks that the Court

---

[13] R. Doc. 58-1 at 2 (*citing*, R. Doc. 58-4).
[14] R. Doc. 72.
[15] R. Doc. 72 at 5 (citing *Latiolais v. Griffith*, 2010 WL 440582, *1 (W.D. La. Feb. 4, 2010) (granting motion to compel defendant's financial information to the extent that defendant was required to be ready to produce the discovery sought at the pretrial conference); *Price v. Lockheed Martin Corp.*, 2006 WL 1686568, *3 (S.D. Miss. June 19, 2006) (granting motion to compel information regarding defendants' net worth to the extent that defendants' sworn financial statement was to be held and maintained as private by Defendants and their counsel until the court ruled that punitive damages are an appropriate subject for the jury's consideration)).
[16] R. Doc. 72 at 7 (citing *Estate of Boles ex rel Price*, 2010 WL 2985824, at *1 (N.D. Miss. July 27, 2010)).
[17] R. Doc. 72 at 7.
[18] R. Doc. 72 at 7-8.

deny Plaintiff's discovery requests as written and require that the information be produced through a deposition or sworn financial statement from Hebert after a summary judgment (in the event of a denial by the Court).[19]

Alternatively, if the Court grants the Motion to Compel, Hebert requests that this Court invoke an "attorneys' eyes only procedure" by directing that the requested information be filed under seal and provided only to Plaintiff's counsel after an *in camera* review by the Court.[20] Hebert further requests that the Court issue a protective order: (1) prohibiting Plaintiff's attorney from revealing the information to anyone, including his client, until the information is offered at trial; (2) limiting the use of the information by Plaintiff's counsel to this proceeding; and (3) requiring that all financial documents, statements, depositions concerning financial information, and information related thereto be destroyed immediately upon the close of the case.[21]

**II.    Law and Analysis**

Under the Federal Rules of Civil Procedure, parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). "For purposes of discovery, relevancy is construed broadly to encompass 'any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue related to the claim or defense of any party.'" *Fraiche v. Sonitrol of Baton Rouge*, 2010 WL 4809328, at *1 (M.D. La. Nov. 19,

---

[19] R. Doc. 72 at 8. A review of the record reveals that Hebert has not yet filed a motion for summary judgment. The deadline for filing dispositive motions is September 29, 2017. (*See*, R. Doc. 63).
[20] R. Doc. 72 at 8.
[21] *Id*. at 8-9

2010) (quoting *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991); Fed. R. Civ. P. 26(b)(1)); *See*, *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S. Ct. 2380, 2389, 57 l.Ed.2d 253 (1978) (same). However, the court must limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Federal Rule of Civil Procedure 26(c) allows the court to issue a protective order after a showing of good cause "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). Rule 26(c)'s "good cause" indicates that the party seeking a protective order has the burden "to show the necessity of its issuance, which contemplates a particular and specific demonstration of fact as distinguished from stereotyped and conclusory statements." *In re Terra Int'l, Inc.*, 134 F.3d 302, 306 (5th Cir. 1998) (quoting *United States v. Garrett*, 571 F.2d 1323, 1326 n.3 (5th Cir. 1978)).

Rule 34 of the Federal Rules of Civil Procedure provides for the discovery of documents and tangible things. Under Rule 34, a party has 30 days after service of discovery to respond or object in writing to the request for production. Fed. R. Civ. P. 34(b)(2)(A). If a party fails to respond fully to requests for production in the time allowed by Rule 34(b)(2)(A), the party seeking discovery may move to compel disclosure and for appropriate sanctions under Rule 37. "An evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4). Additionally, "The party resisting discovery must show specifically how each discovery request is not relevant or otherwise objectionable." *Gondola*

6

*v. USMD PPM, LLC*, 2016 WL 3031852, at *2 (N.D. Tex. May 27, 2016) (citing *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th Cir. 1990)).

### A. Plaintiff's Request for Hebert's Tax Returns

#### 1. Plaintiff's requests for documents regarding Hebert's financial status are not premature.

Plaintiff asserts that his discovery requests seeking information regarding Hebert's financial net worth are not premature because a majority of federal courts permit pretrial discovery of a defendant's financial status without requiring the plaintiff to establish a *prima facie* case on the issue of punitive damages.[22] Hebert takes the opposite position, arguing that the information requested is premature until Plaintiff has established a *prima facie* case and entitlement to punitive damages.[23]

The Civil Rights Act of 1991 provides that punitive damages may be awarded in cases of intentional discrimination, "if the complaining party demonstrates that the respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." 42 U.S.C. § 1981a(b)(1). Courts in this Circuit have consistently held that, "[E]vidence of a defendant's financial worth in an employment case is relevant, discoverable, and admissible at trial to evaluate a plaintiff's punitive damages claim." *Jackson v. Wilson Welding Services, Inc.,* 2011 WL 5024360, at *3 and n.2 (E.D. La. Oct. 20, 2011 (quoting *Ferko v. Nat'l Assoc. For Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 137 (E.D. Tex. 2003) (citing cases)); *Wright v. Weaver*, 2009 WL 5170218, at *4 (E.D. Tex. Dec. 18, 2009); *Briones v. Smith Dairy Queens Ltd.*, 2008 WL 4630485, at *5 (S.D. Tex. Oct. 16, 2008) (citing cases); *See, Bounds v. Capital Area Family Violence Intervention Center, Inc.*, 2016 WL

---
[22] R. Doc. 58-1 at 2.
[23] R. Doc. 72 at 4-5.

1089266, at *7 (M.D. La. Mar. 18, 2016) ("Information regarding a defendant's net worth in an employment case is 'relevant, discoverable, and admissible at trial to evaluate a plaintiff's punitive damages claim.'") (quoting *Jackson*, *supra*); *Singleton v. RPM Pizza, Inc.*, 2004 WL 169802, at *2 (E.D. La. Jan. 26, 2004) ("Some of the requested information about defendant's financial status is relevant and reasonably calculated to lead to the discovery of information relevant to plaintiffs' punitive damages claim, without violating the limitations imposed by Fed. R. Civ. P. 26(b)(2).").

Based on the foregoing, Plaintiff's discovery requests seeking information regarding Hebert's financial net worth are not premature.

### 2. Plaintiff's request for Hebert's federal and state income tax returns from 2010 through 2016 is overly broad.

In the first Request for Production, Plaintiff seeks, "Troy Hebert's federal and state tax returns for the years 2010-2016, inclusive."[24] Plaintiff asserts that Hebert's tax returns are relevant to the issue of punitive damages and that he is entitled to the tax returns from 2010 through 2016 because Hebert became ATC Commissioner in November 2010 and the alleged retaliation and other adverse employment actions took place in 2012. Plaintiff points out that in *Jackson v. Wilson Welding Services, Inc.*, the district court ordered discovery of the defendant's net worth information from 2008 through 2011 because the plaintiffs began their employment with the defendant in June 2008. 2011 WL 5024360, at *3 and n.2 (E.D. La. Oct. 20, 2011). Plaintiff also cites *Alvarez v. Aldi (Texas) LLC*, which held that, "[I]nformation for years prior or subsequent to the specific period covered by the dispute may still be relevant to a Plaintiff's claims." 2014 WL 3624929, at *3 (N.D. Tex. July 22, 2014) (citations omitted). In contrast, Hebert asserts that the request for his tax returns is overly broad because only information regarding his current net worth

---

[24] R. Doc. 58-2 at 4.

8

is relevant to the determination of punitive damages.[25] Hebert also asserts that the discovery request seeks irrelevant information because his tax returns from 2010 to 2016 were filed jointly with his wife and, therefore, contain sensitive financial information regarding his wife that has no bearing on this case. Alternatively, Hebert asserts that if he is required to produce information regarding his net worth, the information should be filed under seal and provided to Plaintiff's counsel for "attorneys' eyes only" review after an *in camera* review by the Court.[26]

Despite Hebert's arguments to the contrary, Hebert's state and federal tax returns from 2010 to 2016 are relevant to Plaintiff's request for punitive damages under 42 U.S.C. § 1983.[27] As Plaintiff points out, other courts in this Circuit have consistently ordered discovery of information regarding a defendant's net worth for some years prior to the current year of the litigation. In *Jackson v. Wilson Welding Services, Inc.*, plaintiffs seeking punitive damages in connection with an employment discrimination claim filed a motion to compel the defendant to produce, "[d]ocuments reflecting Defendant's annual net profit from January 2005 through the present." 2011 WL 5024360, at *1, n.1 (E.D. La. Oct. 20, 2011). While the court found the information relevant to the plaintiffs' punitive damages claim, the court limited discovery to information regarding defendant's annual net profit from 2008 through 2011 because the plaintiffs began their employment with the defendant in June 2008. *Id.* at *4. *See also*, *Singleton v. RPM Pizza, Inc.*, 2004 WL 169802, at *2 (E.D. La. Jan. 26, 2004) (finding defendant's financial status relevant and reasonably calculated to lead to the discovery of information relevant to plaintiffs' punitive damages claim and ordering defendant to "produce its annual reports, financial statements and federal income tax returns from January 2001 to the present.").

---

[25] R. Doc. 72 at 7.
[26] R. Doc. 72 at 8.
[27] R. Doc. 1 at 20-21.

In *Alvarez v. Aldi (Texas) LLC*, the district court flatly denied a defendant's request to limit discovery regarding its net worth to the current year of the litigation (2014). 2014 WL 3624929, at *4. The court explained that while discovery is to be limited to the relevant time period, "[i]nformation for years prior or subsequent to the specific period covered by the dispute may still be relevant to a Plaintiff's claims." *Id.* (citations omitted). In *Alvarez*, the issue arose in the context of defendant's request for a protective order regarding the following corporate deposition topic: "11. Person who can testify about defendant's net worth for 2013 and 2014. A. Bring with them financial statements from 2013 and 2014." 2014 WL 3624929, at *1-2. The court concluded that because the plaintiff had alleged that she was injured on June 15, 2012, "discovery of Defendant's net worth is reasonably limited to 2013 and 2014." *Id.* (citing *Jackson*, 2011 WL 5024360, at *4 (E.D. La. Oct. 20, 2011); *Briones v. Smith Dairy Queens Ltd.*, 2008 WL 4630485, at *5 (S.D. Tex. Oct. 16, 2008) (limiting the plaintiff's discovery of the defendant's financial information to 2007 and 2008 where an alleged discriminatory act took place in 2007 and the discovery was requested in 2008)). *See also*, *Bounds v. Capital Area Family Violence Intervention Center, Inc.*, 2016 WL 1089266, at *7 (M.D. La. Mar. 18, 2016) (ordering defendant to produce its most recent federal income tax return and its most recent audited financial statements and/or audit report in response to plaintiff's request seeking "any and all documents reflecting, indicating, or referring to Defendant's net worth").

Here, Plaintiff asserts that he worked for the ATC from September 29, 1997 until August 18, 2015.[28] Plaintiff also asserts that on April 27, 2011, he was appointed by Hebert as the Special Agent in Charge of Investigations for the entire ATC.[29] In the Motion to Compel, Plaintiff asserts that Hebert became ATC Commissioner in November 2010 and that the alleged retaliation and

---

[28] R. Doc. 1 at 3-4; R. Doc. 62 at 4.
[29] R. Doc. 1 at 4; R. Doc. 62 at 4.

10

other adverse employment actions took place in 2012.[30] Because the acts of retaliation giving rise to this litigation allegedly occurred from 2012 through 2015,[31] the Court concludes that the discovery requested should be limited to Hebert's federal and state income tax returns from 2012 through and including 2016. Other courts within this Circuit have similarly limited discovery of a defendant's net worth information to the years during which the alleged employment discrimination occurred. *See*, *Jackson v. Wilson Welding Services, Inc.,* 2011 WL 5024360, at *1, *4 and n.2 (E.D. La. Oct. 20, 2011) (limiting plaintiffs' discovery of defendant's annual net profit information to 2008-2011, since plaintiffs began their employment with defendant in 2008 and alleged that the discriminatory acts occurred "during the course of their employment"); *Briones v. Smith Dairy Queens Ltd.*, 2008 WL 4630485, at *5 (S.D. Tex. Oct. 16, 2008) (limiting the plaintiff's discovery of the defendant's financial information to 2007 and 2008, where an alleged discriminatory act took place in 2007 and the discovery was requested in 2008); *Singleton v. RPM Pizza, Inc.*, 2004 WL 169802, at *2 (E.D. La. Jan. 26, 2004) (ordering defendant to produce its annual reports, financial statements and federal income tax returns "from January 2001 to the present"); *See also, Alvarez v. Aldi (Texas) LLC*, 2014 WL 3624929, at *3 (N.D. Tex. July 22, 2014) (limiting plaintiff's discovery of defendant's financial information to the years following the underlying injury where plaintiff sought punitive damages); *Wright v. Weaver*, 2009 WL 5170218, at *4 (E.D. Tex. Dec. 18, 2009) (where plaintiff sought compensatory and punitive damages for an injury sustained in March 2007, the court ordered each defendant to produce evidence of their net worth "from January 1, 2007 to present").

---

[30] R. Doc. 58-1 at 2.
[31] R. Doc. 1 at 5-13; R. Doc. 62 at 6-13.

### 3. The current Protective Order provides sufficient protection for Hebert's tax returns.

The undersigned further finds that Hebert has not shown good cause for the issuance of an additional protective order with regard to the tax returns While Hebert seeks an additional order prohibiting Plaintiff's attorney from revealing the contents of Hebert's state and federal tax returns to anyone, including Plaintiff, until such time as it is offered at trial, limiting the use of the tax returns by Plaintiff's counsel to this proceeding, and requiring Plaintiff's counsel to destroy the tax returns immediately upon the close of the case,[32] the Protective Order currently in place already limits the individuals to whom confidential information can be disclosed, limits the use of confidential information to this litigation and in preparation for trial and provides for the return of such information to the producing party upon request at the conclusion of the litigation.[33] Thus, the existing Protective Order addresses many of Hebert's concerns about the need to protect the information sought.

Further, although Hebert points to one case where a district court imposed a similar "attorneys' eyes only" production of the defendant's net worth information,[34] it does not appear that courts within this Circuit require such heightened restrictions on the production of a defendant's tax returns, although such financial information is often subject to a protective order. *See, Bounds v. Capital Area Family Violence Intervention Center, Inc.*, 2016 WL 1089266, at *7 (M.D. La. Mar. 18, 2016) (allowing defendant to "designate its federal income tax return and

---

[32] *See*, R. Doc. 72 at 9.
[33] R. Doc. 41.
[34] *Smith v. Schmidt and McGarland Firm*, 2008 WL 1716646, at *1 (N.D. Miss. Apr. 9, 2008). Hebert also cites an unpublished Order issued by the U.S. District Court for the Middle District of Florida (Tampa), in which the district court held, "However, should the issue of punitive damages survive summary judgment, Plaintiff shall be entitled to a verified disclosure of Defendants' current net worth, subject to a protective order limiting such disclosure to use in these proceedings only." *United States E.E.O.C. v. Rooms to Go, Inc.*, No. 04-2155-SCB-TBM (R. Doc. 43 at 6) (footnote omitted). However, the Order cited by Hebert supports this Court's conclusion that a restrictive "attorneys' eyes only" production of Hebert's tax returns is not warranted in this case.

audited financial statements and/or audit report as containing protected 'confidential information' in compliance with the Protective Order (R. Doc. 29) entered in this action."); *Alvarez v. Aldi (Texas) LLC*, 2014 WL 3624929, at *4 (N.D. Tex. July 22, 2014) (ordering the parties to comply with the following protective order: "The documents and deposition testimony relevant to Topic No. 11 shall not be disclosed or shared in any manner outside the parties and counsel to this lawsuit until the parties can negotiate and the Court can enter an appropriate confidentiality order and the parties can determine whether the documents and deposition testimony are properly subject to protection under the confidentiality order."); *Jackson v. Wilson Welding Services, Inc.,* 2011 WL 5024360, at *4 (E.D. La. Oct. 20, 2011) (concluding that "all documents reflecting Defendant's annual net profit shall be exchanged subject to the parties' protective order."); *Briones v. Smith Dairy Queens Ltd.*, 2008 WL 4630485, at *6 (S.D. Tex. Oct. 16, 2008) (ordering defendant to produce its annual reports and/or financial statements for 2007 and 2008 and further ordering the defendant to "produce such discovery pursuant to a protective order agreed to by the parties aimed at limiting the use of Defendant's financial documents and/or information to matters associated with the prosecution of this case."); *Singleton v. RPM Pizza, Inc.*, 2004 WL 169802, at *3 (E.D. La. Jan. 26, 2004) (ordering defendant to produce its annual reports, financial statements and federal income tax returns from January 2001 to the present and further ordering that, "Any information ordered produced herein deemed confidential by defendant either as proprietary business information or as personal information concerning individual employees or ex-employees may be marked as such and produced only subject to the provisions of the protective order previously entered in this case.").

Hebert also argues the request will require disclosure of his wife's financial information, which, "has no relevance or bearing on this case or any damages awarded in this case as she is not

a party to this case."[35] Plaintiff has not alleged that financial information regarding Hebert's wife is relevant to his punitive damages claim or otherwise discoverable in this litigation. As such, Plaintiff is not entitled to discovery of financial information regarding Hebert's wife, Dr. Dawn Vick. However, because Hebert asserts that his federal and state income tax returns from 2010 to 2016 were filed jointly with his wife, Hebert may designate his tax returns as containing protected "confidential information" in compliance with the Protective Order[36] entered in this action. For each tax return produced in accordance with this Order, Hebert may also redact any personal, financial information pertaining solely to his wife, Dr. Dawn Vick.

### B. Plaintiff's request for documents with information regarding "any and all assets" currently owned by Hebert.

In his second Request for Production, Plaintiff seeks the following:

> 2. Any and all documents in the possession, custody or control of Troy Hebert reflecting all or part of the following information:
> a. any and all assets owned by Troy Hebert at this time;
> b. the fair market value of each asset owned by Troy Hebert at this time; and
> c. *if any assets owned by Troy Hebert at this time are co-owned and/or subject to any mortgages or other encumbrances, please provide the name and address of each co-owner and the name and address of the holder of each mortgage or other encumbrance.*[37]

Plaintiff does not explain the basis for requesting the foregoing information in the Motion to Compel, other than his general assertion that, "It appears to be settled that information regarding a Defendant's net worth in an employment case is relevant, discoverable, and admissible at trial to evaluate a Plaintiff's punitive damages claims [sic]."[38] Hebert asserts that the request is vague,

---

[35] R. Doc. 72 at 7.
[36] R. Doc. 41.
[37] R. Doc. 58-2 at 4 (emphasis in original).
[38] R. Doc. 58-1 at 1 (quoting *Bounds v. Capital Area Family Violence Intervention Ctr. Inc.*, 2016 WL 1089266, at *7 (M.D. La. Mar. 18, 2016)) (internal quotations omitted).

14

overly broad, invasive, and unreasonably burdensome, "as it would appear to cover all of Mr. Hebert's belongings, clothes, furniture, and other personal effects."[39] While the information requested may be relevant to Plaintiff's punitive damages claim, this request is vague, overly broad, invasive, and unreasonably burdensome. As an initial matter, the request is vague, as the term "asset" is not defined in Plaintiff's Second Request for Production of Documents.[40] The request is also overly broad, as it fails to "describe with reasonable particularity each item or category of items to be inspected," as required by Fed. R. Civ. P. 34(b)(1)(A). Finally, the request is unreasonably burdensome as it would require Hebert to produce "any and all documents" regarding virtually everything that he owns, and provide information regarding the fair market value of those things. As such, the Motion to Compel is denied with regard to Request for Production No. 2.

Since the Motion to Compel is only granted in part (and denied in part), Plaintiff's request for the reasonable expenses and attorney's fees incurred in filing the Motion[41] is denied. *See*, Fed. R. Civ. P. 37(a)(5)(C).

### III. Conclusion

For the reasons set forth herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Compel Defendant Troy Hebert's Responses to Plaintiff's Second Requests for Production of Documents[42] is **GRANTED in part**, such that, within twenty-one (21) days of the date of this Order, Hebert shall produce his state and federal income tax returns from 2012 through 2016. Hebert is advised that for each tax return produced in response to Request for Production No. 1, Hebert may designate the tax return as containing protected "confidential information" in

---

[39] R. Doc. 72 at 8.
[40] R. Doc. 58-2 at 2-3.
[41] R. Doc. 58 at 1.
[42] R. Doc. 58.

compliance with the Protective Order[43] entered in this action.  Hebert may also redact from each tax return produced subject to this Order any personal, financial information pertaining solely to his wife, Dr. Dawn Vick.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Compel Defendant Troy Hebert's Responses to Plaintiff's Second Requests for Production of Documents[44] is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's request for reasonable expenses and attorney's fees under Fed. R. Civ. P. 37(a)(5)(A) is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff shall seek additional authorization from this Court prior to seeking to compel additional financial documents from Hebert.  Any request for additional financial documents beyond those authorized by this Order shall be accompanied by specific facts that articulate the need for the additional documentation.

Signed in Baton Rouge, Louisiana, on May 26, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[43] R. Doc. 41.
[44] R. Doc. 58.