# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**BRETTE TINGLE**                                                **CIVIL ACTION**

**VERSUS**                                                         **NO. 15-626-JWD-EWD**

**TROY HEBERT, IN HIS INDIVIDUAL
CAPACITY AND IN HIS OFFICIAL
CAPACITY AS THE COMMISSIONER
OF THE OFFICE OF ALCOHOL AND
TOBACCO CONTROL OF THE LOUISIANA
DEPARTMENT OF REVENUE, ET AL.**

## RULING AND ORDER ON DEFENDANT'S MOTION TO COMPEL AND FOR ATTORNEY'S FEES

Before the Court is a Motion to Compel Discovery and for Attorney's Fees (the "Motion to Compel"), filed by Troy Hebert ("Hebert"), in his individual capacity and in his official capacity as the former Commissioner of the Louisiana Office of Alcohol and Tobacco Control ("ATC").[1] The Motion to Compel is opposed[2] and Hebert has filed a reply.[3] In the Motion to Compel, Hebert seeks to compel Plaintiff to produce certain e-mails and text messages sent or received by Plaintiff on his personal cell phone and through his personal email accounts, as well as information that Plaintiff deleted from his ATC-issued cell phone prior to returning it to the ATC.[4]

---

[1] R. Doc. 59.
[2] R. Doc. 84.
[3] R. Doc. 88.
[4] R. Doc. 59-1 at 1. The Motion to Compel also sought the production of the records produced to Plaintiff by the Office of Inspector General ("OIG") in response to a subpoena issued by Plaintiff. *Id.* However, on March 23, 2017, Hebert filed a Motion to Withdraw Part of Defendant's Motion to Compel, seeking to withdraw the portion of the Motion to Compel requesting the OIG records because Plaintiff had produced the requested documents to Hebert. (R. Doc. 79 at 1). Because the Court granted the Motion to Withdraw on May 31, 2017 (R. Doc. 96), Hebert's request to compel the OIG records produced to Plaintiff in response to the subpoena is no longer before the Court and will not be addressed in this Ruling and Order.

For the reasons that follow, the Motion to Compel is **GRANTED in part**.[5] Hebert's request for reasonable expenses and attorney's fees under Fed. R. Civ. P. 37(a)(5)(A) is **DENIED.**

I.  **Background**

On September 16, 2015, Plaintiff filed a Complaint in this Court against Hebert, asserting claims of retaliation under 42 U.S.C. §§ 1981 and 1983, invasion of privacy under the United States and Louisiana Constitutions, and defamation under Louisiana law.[6] In the Complaint, Plaintiff alleges that he was terminated from his employment with the ATC by Hebert in retaliation for his participation as a witness in race discrimination charges filed by three of his former co-workers against the ATC with the Equal Employment Opportunity Commission ("EEOC") and his participation as a witness in the ensuing litigation against the ATC and Hebert in that matter, as well as his participation as a witness in litigation against the Louisiana Department of Revenue brought by another former co-worker, Randall Kling, who claims Hebert retaliated against Kling by terminating Kling's employment with the ATC after Kling complained of Hebert's discriminatory practices at the ATC.

On January 30, 2017, Hebert filed the instant Motion to Compel, seeking to compel Plaintiff to respond to Request for Production Nos. 8, 9, 10, 11 and 12, which request the following documents: (1) all text messages exchanged between Plaintiff and any former or current ATC employee between January 1, 2012 and the present; (2) all e-mails sent, received or exchanged by or between Plaintiff and any former or current ATC employee between January 1, 2012 and the

---

[5] A motion to compel is a nondispositive, pretrial discovery motion." *State Farm Mut. Auto. Ins. Co. v. Friedman*, 2002 WL 649417, at *1 (N.D. Tex. Jan. 14, 2002) (*citing Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir. 1995)). *See*, *Turner v. Hayden*, 2016 WL 6993864, at *1 (W.D. La. Nov. 29, 2016) ("The decision by Magistrate Hornsby to deny Turner's Motion to Compel Discovery is a non-dispositive matter."); *In re Tex. Bumper Exchange, Inc.*, 333 B.R. 135, 138 (Bankr. W.D. Tex. 2005) (holding bankruptcy court's order granting motion to compel discovery was an interlocutory order as the order concerned a nondispositive discovery issue and did not dispose of the merits of litigation).
[6] R. Doc. 1.

present from any email accounts maintained or accessed by Plaintiff; (3) any text messages or emails sent, received or exchanged by Plaintiff referring to Hebert or Plaintiff's employment with the ATC; (4) all text messages sent or received from Plaintiff's ATC-issued cell phone between January 1, 2012 and February 25, 2015; and (5) any emails, text messages, data, information or documents deleted from Plaintiff's ATC-issued cell phone before the phone was returned to the ATC in February 2015.[7]

Plaintiff raised the same objection to Request for Production Nos. 8 and 9, asserting that he had returned his ATC-issued cell phone to the ATC and, therefore, does not have possession, custody, or control of any text messages or e-mails other than those previously provided by Hebert.[8] With respect to Request for Production No. 10, Plaintiff asserted that Hebert is already in possession of all ATC text messages and e-mails and Plaintiff objected to producing private communications because "information previously provided to the Defendant in good faith has been used to harm the Plaintiff and his associates."[9] Plaintiff did not object to Request for Production No. 11 and appears to have produced documents in response thereto.[10] Plaintiff responded to Request for Production No. 12 by asserting that, "There are no such documents to the Plaintiff's knowledge."[11]

As a result of a discovery conference held pursuant to Fed. R. Civ. P. 37(a)(1) on December 9, 2016, Plaintiff served Hebert with supplemental discovery responses on December 21, 2016. Hebert asserts, however, that Plaintiff did not produce any additional documents and merely added objections to his original discovery responses. In his supplemental responses to Request for

---

[7] R. Doc. 59-2 at 6-7.
[8] R. Doc. 59-3 at 7.
[9] R. Doc. 59-3 at 8.
[10] R. Doc. 59-3 at 8. Plaintiff responded to Request for Production No. 11 with, "See attached." *Id*. However, no additional information is provided regarding the documents produced in response to this request.
[11] *Id*.

3

Production Nos. 8, 9 and 10, Plaintiff asserted that he did not use his personal cell phone or personal email addresses for ATC business, so the contents of any text messages or emails sent or received from those email accounts or that device are irrelevant, not discoverable, and not reasonably calculated to lead to the discovery of admissible evidence.[12]

In the Motion to Compel, Hebert asserts that the emails and text messages requested are relevant to the claims and defenses in this case. Specifically, Plaintiff claims he was wrongfully terminated and that Hebert conducted an unreasonable search of the text messages on Plaintiff's ATC-issued cell phone and Hebert asserts that Plaintiff was terminated for non-retaliatory reasons, including sending a racially inflammatory text message to another ATC employee. Thus, Hebert contends that Plaintiff's text messages and how the ATC came to acquire those text messages is a central issue in this case. Hebert also asserts that the communications are relevant because Hebert "believes Plaintiff has been and continues to communicate with current and former employees of the ATC, coaching them, and providing misinformation about Hebert and the ATC in an effort to stir employees up against Hebert and to bring litigation against the ATC."[13] Hebert claims that he requested the text messages and emails to determine whether and when Plaintiff contacted ATC employees about suing the ATC and what information Plaintiff provided. Hebert further asserts that the "confidential information" that Plaintiff removed from his ATC-issued cell phone before returning it to the ATC is relevant to Plaintiff's invasion of privacy claim regarding the subsequent search of the cell phone.

In opposition, Plaintiff asserts that Hebert failed to cite any authority or otherwise explain why the information sought is discoverable.[14] Plaintiff asserts that Hebert fails to adequately state

---

[12] R. Doc. 59-8 at 8-9.
[13] R. Doc. 59-1 at 8.
[14] R. Doc. 84 at 1.

how any of the requested information is relevant to his defense of Plaintiff's claims of retaliation under 42 U.S.C. § 1983, invasion of privacy under state and federal law, defamation, wrongful termination, and Plaintiff's Fourth Amendment violation claim based on the illegal search and seizure of emails and text messages from his ATC-issued cell phone. Plaintiff concedes that he sent one inappropriate communication to another ATC employee (his wife), but argues that its admissibility is vigorously contested since the communication was the fruit of an illegal search and seizure. Plaintiff also denies the legitimacy of any ATC "policy" prohibiting ATC employees from using their ATC-issued cell phones for personal use and asserts that any such policy was the product of Hebert's whim on any given day. Plaintiff asserts that he previously testified that the emails, text messages, and other information deleted from his ATC-issued cell phone prior to returning it to the ATC included bank statements, Coast Guard passwords, and text messages between Plaintiff and his family and friends.[15] Plaintiff also testified that he did not delete any text messages and emails between himself and ATC employees.[16]

Plaintiff argues that although Hebert conclusively states that other possibly existing racially-charged text messages and/or emails between Plaintiff and his family members are relevant, Hebert fails to explain how such information is discoverable to prove any of Hebert's defenses. Plaintiff cites a recent Fifth Circuit opinion, in which the Court held that, "as the ultimate issue is the employer's reasoning *at the moment* the questioned employment decision is made, a justification that *could not* have motivated the employer's decision is not evidence that tends to illustrate the ultimate issue and is therefore simply irrelevant at this stage of the inquiry." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 237 (5th Cir. 2016) (emphasis in original). Plaintiff points out that Hebert cites no authority for his position that a party must produce personal, confidential

---

[15] *See,* R. Doc. 59-4 at 2-6.
[16] *Id.* at 5.

5

and irrelevant communications between himself and his family and friends to the requesting party, especially where, as here, the requesting party previously published such information in news media outlets throughout Louisiana to harass Plaintiff. Plaintiff denies Hebert's assertion that Plaintiff has been communicating with ATC employees and encouraging them to sue the ATC. Plaintiff asserts that even if the requested communications supported Hebert's assertion, Hebert fails to explain what defense these communications would support. Nonetheless, Plaintiff included a short privilege log for the information that has been withheld on the basis that it is privileged, irrelevant, and/or consists of private/personal information.[17] Plaintiff asserts that the documents can be made available for an *in camera* inspection should the Court so desire.

In reply, Hebert reasserts many of the arguments raised in the Motion to Compel, emphasizing that Plaintiff has not provided any emails from his private email accounts, any text messages from his personal cell phone, or the information Plaintiff deleted from his ATC-issued cell phone prior to returning it to the ATC.[18] Hebert contends that because Plaintiff participated in the EEOC charges and lawsuits of three other ATC employees-Charles Gilmore, Damian McDowell, and Larry Hingle-Plaintiff's emails and text messages with Gilmore, McDowell and Hingle are relevant. Hebert further asserts that because Plaintiff has identified many ATC employees as witnesses in this matter, Plaintiff's communications with these employees are relevant and discoverable, whether they were sent or received on Plaintiff's personal cell phone, Plaintiff's personal email accounts, or Plaintiff's ATC-issued cell phone. Hebert further asserts that Plaintiff's privilege log fails to sufficiently identify the information Plaintiff is withholding, as the log does not identify whether the information was withheld from Plaintiff's ATC-issued cell phone, his personal cell phone, or his personal email accounts. Hebert also asserts that the

---

[17] R. Doc. 84 at 6.
[18] R. Doc. 88.

privilege log fails to describe the topic of the communications and fails to specify the sender and the recipient of each message. Because there is a protective order in place, Hebert asserts Plaintiff should produce the text messages and emails requested.

**II.     Law and Analysis**

Under the Federal Rules of Civil Procedure, parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). A determination of relevancy is tied to applicable substantive law and then weighed against six proportionality factors. Any information sought that is not relevant to a party's claim or defense is not discoverable, regardless of proportionality. The Court must additionally limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Rule 34 of the Federal Rules of Civil Procedure provides for the discovery of documents and tangible things. Under Rule 34, a party has 30 days after service of discovery to respond or object in writing to the request for production. Fed. R. Civ. P. 34(b)(2)(A). If a party fails to respond fully to requests for production in the time allowed by Rule 34(b)(2)(A), the party seeking discovery may move to compel disclosure and for appropriate sanctions under Rule 37. "An

evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(4).

### A. Hebert's Requests for Plaintiff's Emails and Text Messages from Plaintiff's Private Email Accounts and Personal Cell Phone Are Not Proportional to the Needs of the Case.

In the Motion to Compel, Hebert seeks to compel Plaintiff to respond to the following discovery requests:

> **REQUESTS FOR PRODUCTION NO. 8:**
> Produce all text messages exchanged between you and any former or current employee of the ATC between January 1, 2012, until present.
>
> **REQUEST FOR PRODUCTION NO. 9:**
> Produce all electronic mail (e-mail) messages sent, received or exchanged by or between you and any former or current employee of the ATC between January 1, 2012, until present. Defendant seeks emails from any email accounts maintained or accessed by Plaintiff, including, but not limited to "uscgtingle@yahoo.com," "uscgtingle@gmail.com," or acutabovelaawnandmaintenance@gmail.com.
>
> **REQUEST FOR PRODUCTION NO. 10:**
> Produce any text or electronic mail messages sent, received or exchanged by you referring to or otherwise relating to Troy Hebert or your employment with the ATC.[19]

Hebert asserts that the emails and text messages are relevant to his assertion that Plaintiff was terminated for non-retaliatory reasons, including sending a racially inflammatory text message to another ATC employee. Hebert also asserts that the communications are relevant to his claim that Plaintiff has been communicating with ATC employees and providing misinformation about Hebert and the ATC to persuade ATC employees to file suit against Hebert and the ATC. Hebert does not cite any jurisprudence to support his claim that Plaintiff should be compelled to produce these communications. In contrast, Plaintiff asserts that he did not use his personal cell phone or

---

[19] R. Doc. 59-1 at 2-3; *See*, R. Doc. 59-2 at 6.

his personal email addresses for ATC business, so the contents of any such text messages and emails are irrelevant to this matter, not discoverable, not reasonably calculated to lead to the discovery of admissible evidence, and are requested solely to harass Plaintiff and to invade the privacy of Plaintiff and his family.

Hebert's discovery requests for Plaintiff's emails and text messages are not proportional to the needs of the case. A request for "all text messages" and "all electronic mail (e-mail) messages" that Plaintiff exchanged with any former or current employee of the ATC between January 1, 2012 and the present encompasses a large array of communications, not all of which are likely to be relevant. Hebert's request for "any text or electronic mail messages sent, received, or exchanged by you referring to or otherwise relating to Troy Hebert or your employment with the ATC" fails to specify a time period for the information requested. The request would also encompass a large number of communications that may not be relevant to the claims or defenses in this litigation. Parties are not required to produce discovery regarding matters not relevant to the litigation.

Emails and text messages exchanged between Plaintiff and current or former ATC employees relating to Hebert or allegations of race discrimination at ATC, if such communications exist, are potentially relevant in this case. For example, Plaintiff is required as part of his retaliation claim to establish a good faith, reasonable belief that he was opposing an employment practice made unlawful by Title VII. If, for example, Plaintiff's communications with ATC employees showed that he was trying to incite other ATC employees to bring allegations against Hebert without a good faith belief that Hebert was engaging in employment practices that violated Title VII, that information would be relevant. However, any such communications should be limited to the pertinent time period of the period of retaliation alleged in this case. According to the Complaint, the acts of retaliation giving rise to this litigation allegedly occurred from October 4,

9

2012, the day Hebert received copies of the EEOC charges filed by Gilmore, McDowell, and Hingle and learned of Plaintiff's participation as a witness in those proceedings, through Plaintiff's termination on August 18, 2015.[20] However, the Complaint also mentions that on August 22, 2012, Plaintiff advised McDowell and Gilmore of some of the facts underlying their EEOC charges, namely that Hebert had confided in Plaintiff that Hebert "intended to break up the 'black trio'—referring to Plaintiff McDowell, Plaintiff Gilmore and Bennie Walters—in North Louisiana."[21] Thus, it is appropriate to limit Hebert's Request for Production Nos. 8, 9 and 10 to any text messages or emails that Plaintiff exchanged with former or current ATC employees on Plaintiff's personal cell phone and any of Plaintiff's personal email addresses between August 22, 2012 and August 18, 2015 that reference or discuss Hebert or allegations of race discrimination at ATC.

To the extent that any of the text messages or emails produced subject to this Ruling and Order contain "confidential information," Plaintiff may designate those communications as containing "confidential information" in compliance with the Protective Order[22] entered in this action. The Protective Order limits the individuals to whom confidential information can be disclosed, limits the use of confidential information to this litigation and in preparation for trial and provides for the return of such information to the producing party upon request at the conclusion of the litigation.[23] Thus, the Protective Order addresses Plaintiff's concerns regarding Hebert's possible use of the requested documents to harass Plaintiff and his family and to invade their privacy. Plaintiff has not shown that the protections in the existing Protective Order will not adequately protect any privacy interests he may have in the information sought.

---

[20] R. Doc. 1 at 5-13; *See,* R. Doc. 62 at 6-13.
[21] R. Doc. 1 at 10; *See*, R. Doc. 62 at 11.
[22] R. Doc. 41.
[23] *Id.*

### B. Hebert's Requests for All Text Messages, Emails, and Information Deleted from Plaintiff's ATC-Issued Cell Phone Seek Irrelevant Information.

Hebert also seeks to compel Plaintiff to respond to the following discovery requests:

> **REQUEST FOR PRODUCTION NO. 11:**
> Produce written copies of all text messages from your ATC issued cellular phone sent or received from January 1, 2012, through February 25, 2015.
>
> **REQUEST FOR PRODUCTION NO. 12:**
> Produce copies of any emails, text messages, data, pictures, information or documents deleted from your ATC issued iPhone/ cellular phone downloaded, printed or copied before returning the phone to the ATC in February 2015.[24]

In the Motion to Compel, Hebert addresses these discovery requests together, asserting that whether there were other racially-charged text messages and/or emails on Plaintiff's ATC-issued cell phone that were deleted before Plaintiff returned the phone to the ATC is relevant to Hebert's defense that Plaintiff was terminated for non-retaliatory reasons, namely for sending a racially inflammatory text message to another ATC employee. Hebert asserts that the information is also relevant to determine whether Plaintiff was communicating with other ATC employees and feeding them misinformation about Hebert and the ATC. Hebert further asserts that the deleted information is relevant to Plaintiff's invasion of privacy claim because Plaintiff knew the ATC was going to search his ATC-issued cell phone, so the deleted information shows what information Plaintiff considered confidential when he returned the phone to the ATC. Plaintiff maintains that he previously testified that the information deleted from his ATC-issued cell phone includes bank statements, Coast Guard passwords, and text messages between Plaintiff and his family members and friends, and that he did not delete any communications between himself and ATC employees.

---

[24] R. Doc. 59-1 at 2-3; *See*, R. Doc. 59-2 at 6-7.

The information and communications sought by Request for Production Nos. 11 and 12 do not appear to be relevant to any claim or defense in this litigation. According to the portion of Plaintiff's deposition testimony attached to the Motion to Compel, Plaintiff described the information deleted from his ATC-issued cell phone as "notes with passwords on it," "my "bank stuff," and "bank account records and passwords for the Coast Guard and that kind of stuff that I didn't want on my phone."[25] Plaintiff testified that "most of it was text messages between me and my wife and my kids and family members."[26] Plaintiff further testified that he "left anything from the employee on the phone" and that, "I think - - when I saw an agent's name, I left it on the phone . . . I don't think I deleted any e-mails."[27] Hebert has not shown that information such as passwords and electronic communications between Plaintiff and his family members is relevant to this litigation. Nor has Hebert pointed to any evidence to suggest that Plaintiff deleted information other than what he testified to during his deposition. Thus, Hebert's request appears to be a fishing expedition for racially inflammatory emails or text messages that Hebert believes may have been deleted from Plaintiff's ATC-issued cell phone. As set forth in *Heinsohn,* 832 F.3d at 237, however, racially inflammatory emails and text messages about which Hebert was unaware cannot form the basis for the termination of Plaintiff's employment and thus, are not relevant to assisting Hebert in establishing the legitimate, nondiscriminatory reason for terminating Plaintiff's employment that he has alleged in this case.

However, to the extent that Plaintiff deleted any emails or text messages from his ATC-issued cell phone that were exchanged between Plaintiff and a former or current ATC employee between August 22, 2012 and August 18, 2015 that reference or discuss Hebert or race

---

[25] R. Doc. 59-4 at 3, 5.
[26] R. Doc. 59-4 at 5.
[27] R. Doc. 59-4 at 5-6.

discrimination at ATC, such communications must be produced for the same reasons set forth in Section II(A). Similarly, if Plaintiff maintains that any such communications contain "confidential information," Plaintiff may designate the communications as containing "confidential information" in compliance with the Protective Order[28] entered in this action.

Since the Motion to Compel is only granted in part (and denied in part), Hebert's request for the reasonable expenses and attorney's fees incurred in filing the Motion to Compel[29] is denied. *See*, Fed. R. Civ. P. 37(a)(5)(C).

### III. Conclusion

For the reasons set forth herein, **IT IS HEREBY ORDERED** that Defendant's Motion to Compel Discovery and For Attorney's Fees[30] is **GRANTED in part**, such that, within twenty-one (21) days of the date of this Ruling and Order, Plaintiff shall produce any text messages or emails that Plaintiff exchanged with former or current ATC employees on Plaintiff's personal cell phone, or any of Plaintiff's personal email addresses, or any text messages or emails that were deleted from Plaintiff's ATC-issued cell phone prior to Plaintiff returning the cell phone to the ATC, for the time period between August 22, 2012 and August 18, 2015 that reference or discuss Hebert or race discrimination at ATC. To the extent any such communications contain "confidential information," Plaintiff may so designate the communications in compliance with the Protective Order[31] entered in this action.

**IT IS FURTHER ORDERED** that Hebert's Motion to Compel[32] is otherwise **DENIED.**

---

[28] R. Doc. 41.
[29] R. Doc. 59 at 1.
[30] R. Doc. 59.
[31] R. Doc. 41.
[32] R. Doc. 59.

**IT IS FURTHER ORDERED** that Hebert's request for reasonable expenses and attorney's fees under Fed. R. Civ. P. 37(a)(5)(A) is **DENIED**.

Signed in Baton Rouge, Louisiana, on June 8, 2017.

                                      **ERIN WILDER-DOOMES**
                                      **UNITED STATES MAGISTRATE JUDGE**