# UNITED STATES DISTRICT COURT

# MIDDLE DISTRICT OF LOUISIANA

**BRETTE TINGLE**  **CIVIL ACTION**

**VERSUS**  **NO. 15-626-JWD-EWD**

**TROY HEBERT, IN HIS INDIVIDUAL
CAPACITY AND IN HIS OFFICIAL
CAPACITY AS THE COMMISSIONER
OF THE OFFICE OF ALCOHOL AND
TOBACCO CONTROL OF THE LOUISIANA
DEPARTMENT OF REVENUE, ET AL.**

## RULING AND ORDER ON PLAINTIFF'S MOTION TO COMPEL

Before the Court is a Motion to Compel, filed by plaintiff Brette Tingle.[1] The Motion is opposed by defendant Troy Hebert ("Hebert").[2] In the Motion, Plaintiff seeks to compel responses to certain interrogatories and requests for production propounded upon Hebert. For the reasons that follow, the Motion to Compel is **DENIED**.[3] Plaintiff's request for reasonable expenses and attorney's fees under Fed. R. Civ. P. 37(a)(5)(A) is **DENIED.**

### I.   Background

On September 16, 2015, Plaintiff filed a Complaint in this Court against Hebert, asserting claims of retaliation under 42 U.S.C. §§ 1981 and 1983, invasion of privacy under the United States and Louisiana Constitutions, and defamation under Louisiana law.[4] In the Complaint,

---

[1] R. Doc. 60.
[2] R. Doc. 82.
[3] A motion to compel is a nondispositive, pretrial discovery motion." *State Farm Mut. Auto. Ins. Co. v. Friedman*, 2002 WL 649417, at *1 (N.D. Tex. Jan. 14, 2002) (*citing Castillo v. Frank*, 70 F.3d 382, 385 (5th Cir. 1995)). *See*, *Turner v. Hayden*, 2016 WL 6993864, at *1 (W.D. La. Nov. 29, 2016) ("The decision by Magistrate Hornsby to deny Turner's Motion to Compel Discovery is a non-dispositive matter."); *In re Tex. Bumper Exchange, Inc*., 333 B.R. 135, 138 (Bankr. W.D. Tex. 2005) (holding bankruptcy court's order granting motion to compel discovery was an interlocutory order as the order concerned a nondispositive discovery issue and did not dispose of the merits of litigation).
[4] R. Doc. 1.

Plaintiff alleges that he was terminated from his employment with the Louisiana Office of Alcohol and Tobacco Control (the "ATC") by Hebert in retaliation for his participation as a witness in race discrimination charges filed by three of his former co-workers against the ATC with the Equal Employment Opportunity Commission ("EEOC") and his participation as a witness in the ensuing litigation against the ATC and Hebert in that matter, as well as his participation as a witness in litigation against the Louisiana Department of Revenue brought by another former co-worker, Randall Kling, who claims Hebert retaliated against Kling by terminating Kling's employment with the ATC after Kling complained of Hebert's discriminatory practices at the ATC.

On January 30, 2017, Plaintiff filed the instant Motion to Compel, seeking to compel Hebert to respond to Interrogatory Nos. 6 and 7 and Request for Production Nos. 1, 6, 7, and 11, which seek: (1) information and documents regarding an incident that occurred on or about January 21, 2012 at The Bulldog bar in Baton Rouge, Louisiana ("The Bulldog");[5] (2) documents and written communications that reference Plaintiff; (3) the findings from any ATC investigations into unfair or discriminatory treatment of ATC employees while Hebert was Commissioner of the ATC; and (5) documents regarding any requests by Hebert to the Louisiana Department of Revenue ("LDR") to investigate whether Plaintiff endangered the life of former ATC agent, Laurie Duhé Claiborne.[6] Hebert objected to each of the foregoing requests on the basis that they are overly broad, unduly burdensome, vague, and not reasonably calculated to lead to the discovery of admissible evidence. Without waiving these objections, however, Hebert produced documents in response to all but two of the requests (Request for Production Nos. 7 and 11). Hebert further objected to Request for Production No. 7 as requesting documents protected by the attorney-client

---

[5] According to Plaintiff, on or about January 21, 2012, a patron of The Bulldog was allegedly served too much alcohol and was subsequently involved in a serious accident in which one bicyclist was killed and another bicyclist was seriously injured. (R. Doc. 60-3 at 8).
[6] R. Doc. 60-3 at 2-4.

2

and/or attorney work product privileges and asserted that he had no responsive documents to Request for Production No. 11.[7]

Plaintiff asserts that on October 27, 2016, his counsel sent a letter to Hebert's counsel regarding Hebert's responses to the foregoing discovery requests, asserting that Hebert's objections do not comply with Fed. R. Civ. P. 33 or 34 because the objections are not stated with specificity and the responses do not specify whether any responsive materials are being withheld. Plaintiff further asserts that a discovery conference was held pursuant to Fed. R. Civ. P. 37(a)(1) on October 27, 2016, during which Hebert agreed to provide responses to the discovery requests at issue. Plaintiff claims that he had not received supplemental responses as of the date of filing the Motion to Compel.

In the Motion to Compel, Plaintiff argues that the information and documents sought by Interrogatory Nos. 6 and 7 and Request for Production Nos. 1, 6, 7, and 11 are relevant to his claims of employment discrimination and retaliation. Plaintiff asserts that Interrogatory Nos. 6 and 7 and Request for Production No. 6 seek information and documents regarding an incident that occurred at The Bulldog on January 21, 2012, which are relevant to support Plaintiff's retaliation claim. Plaintiff claims that the information will show Hebert's vindictive personality with respect to the African American ATC agent, Anthony Augustine, who was initially assigned to investigate the incident at The Bulldog. Plaintiff alleges that during the investigation, Hebert grew dissatisfied with Augustine and when Plaintiff came to Augustine's defense, Hebert retaliated against Plaintiff by transferring Plaintiff from the ATC's Baton Rouge office to the ATC's New Orleans office.[8]

---

[7] *See*, R. Doc. 60-5 at 7, 9, 12, 14.
[8] R. Doc. 60-3 at 9.

Plaintiff also claims that the information and documents requested are relevant to show that Plaintiff reasonably believed that Hebert was discriminating against African American ATC employees when Plaintiff participated in the EEOC proceeding filed by three other African American ATC employees, Charles Gilmore, Damien McDowell, and Larry Hingle. Plaintiff further asserts that the ATC's investigation of The Bulldog and Plaintiff's support of Augustine will support Plaintiff's claim that Hebert's reason for terminating Plaintiff is pretextual. Finally, Plaintiff asserts that information and documents regarding the investigation of the incident at The Bulldog will show that Hebert's deposition testimony is not credible. Plaintiff claims that Hebert testified that he did not know who was representing The Bulldog during the investigation, even though Hebert also testified that he vacations with Chris Young, the attorney who was representing The Bulldog at the time of the investigation.

With respect to Request for Production No. 1, which seeks documents and any written communications that mention Plaintiff's name in the body of the document, Plaintiff asserts the request is relevant to show Hebert's intentions to retaliate against Plaintiff, as well as when those intentions were formed and how they were expressed. With respect to Request for Production No. 7, which seeks the findings of any ATC investigation into whether Hebert discriminated against persons of color at the ATC, Plaintiff claims the documents are relevant to show the reasonableness of his belief that Hebert was discriminating against ATC employees, which is an element of Plaintiff's retaliation claim. As for Request for Production No. 11, which seeks documents referring or relating to any requests that Hebert made to the LDR to investigate whether Plaintiff had endangered the life of former ATC agent Laurie Duhé Claiborne, Plaintiff asserts the documents are relevant to Hebert's credibility. Specifically, Plaintiff asserts the documents will show whether it was Plaintiff, rather than Hebert, who put Claiborne, an African American former

4

ATC agent, in harm's way by ordering her to conduct inspections in uniform at the same establishments where she had previously worked undercover in plain clothes.

Plaintiff further asserts that Hebert's responses to Interrogatory Nos. 6 and 7 are deficient because Hebert did not sign them and that none of the responses comply with Fed. R. Civ. P. 33 or 34 because Hebert failed to state with specificity the grounds for his objections and failed to state whether any responsive materials were being withheld. As such, Plaintiff seeks the reasonable expenses and attorney's fees incurred in filing the Motion to Compel.

Hebert opposes the Motion to Compel, asserting that he has produced all relevant information and documents that are readily available and that the Motion to Compel seeks additional information and documents that are not relevant or proportional to the needs of this case.[9] Hebert claims that Plaintiff failed to mention that Hebert supplemented his discovery responses three times before Plaintiff filed the Motion to Compel and once more after the Motion was filed, thereby obviating the need for the Motion. Hebert asserts that he has fully and completely answered the discovery requests at issue by providing specific objections to each request, producing additional documents, and by specifying whether any documents were withheld as privileged. Thus, Hebert asserts that the Motion to Compel should be denied.

## II. Law and Analysis

Under the Federal Rules of Civil Procedure, parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the

---

[9] R. Doc. 82.

proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). A determination of relevancy is tied to applicable substantive law and then weighed against six proportionality factors. Any information sought that is not relevant to a party's claim or defense is not discoverable, regardless of proportionality. The Court must additionally limit the frequency or extent of discovery if it determines that: "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Motions to compel discovery responses are governed by Rule 37(a) of the Federal Rules of Civil Procedure. "Rule 37(a)(3)(B) provides that a party seeking discovery may move for an order compelling production or answers against another party when the latter has failed to produce documents requested under Federal Rule of Civil Procedure 34 or to answer interrogatories under Federal Rule of Civil Procedure 33." *Gondola v. USMD PPM, LLC*, 2016 WL 3031852, at *2 (N.D. Tex. May 27, 2016) (*citing* Fed. R. Civ. P. 37(a)(3)(B)(iii)-(iv)).

In response to an interrogatory under Rule 33, "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). In addition, "The grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4). In response to a request for production under Rule 34, "For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons." Fed. R. Civ. P. 34(b)(2)(B). Further, "an objection must state whether any

responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest." Fed. R. Civ. P. 34(b)(2)(C).

**A. Plaintiff's Requests for Information and Documents Regarding the Incident that Occurred at The Bulldog on January 21, 2012 Seek Information Not Relevant to any of the Claims or Defenses in this Case.**

Plaintiff seeks to compel Hebert to respond to the following discovery requests, which purportedly seek information and documents regarding the events that occurred at The Bulldog on January 21, 2012:

> **INTERROGATORY NO. 6:**
> Please describe with specificity any documents or any other forms of communication, including without limitation, emails, text messages, facsimile messages, letters, memos between and/or among the following: Louisiana Office of Alcohol and Tobacco Control of the Louisiana Department of Revenue, the Louisiana Department of Revenue, Chris G. Young, Young Law Group, APLC, the Bulldog BR L.L.C., Jessica Starns and/or their agents or representatives between October 1, 2010 and December 31, 2015.
>
> **INTERROGATORY NO. 7:**
> Please describe with specificity any and all documents, including, without limitation, reports, emails, text messages, facsimile messages, letter, memos and other forms of written communications that comprise and/or reflect the investigation of the Bulldog B.R. L.L.C. and/or its place of business located at 4385 Perkins Road, Baton Rouge, Louisiana by the Louisiana Office of Alcohol and Tobacco Control and/or any person, firm or corporation acting on behalf of the Louisiana Office of Alcohol and Tobacco Control in relation to incidents that allegedly occurred on January 20, 2012 and/or January 21, 2012 when a patron was allegedly served too much alcohol at the Bulldog place of business at 4385 Perkins Road, Baton Rouge and was thereafter involved in a serious accident with two (2) bicycles.
>
> **REQUEST FOR PRODUCTION NO. 6:**
> Please provide authentic and complete copies of the documents described below. Any and all documents relating to and/or referring to any and all enforcement proceedings brought by the ATC regarding the Bulldog B.R. L.L.C. or its place of business located at 4385 Perkins Road, Baton Rouge, Louisiana between October 1, 2011 and December 31, 2015 including, without limitation, any and

>   all draft and/or final reports of said investigations and any and all surveillance videos of the patrons who were served alcohol beverages at the Bulldog place of business on January 21, 2012 and/or January 21, 2012 and who were thereafter involved in a serious accident with two (2) bicycles.[10]

Plaintiff asserts that information regarding the incident that occurred at The Bulldog on January 21, 2012 is relevant to his claims of employment discrimination and retaliation for three reasons: (1) it will provide proof of Hebert's vindictive personality; (2) it will show that Plaintiff had a reasonable belief that Hebert was discriminating against African American ATC employees when Plaintiff participated in the EEOC proceeding filed by Gilmore, McDowell, and Hingle; and (3) it will show that Hebert's testimony is not credible.[11] Hebert originally objected to these requests as overly broad, unduly burdensome, vague and not reasonably calculated to lead to the discovery of admissible evidence, but Hebert produced responsive documents subject to and without waiving those objections.[12] In his supplemental discovery responses, however, Hebert raised specific objections to each request, asserting that the information and documents sought are not relevant to Plaintiff's claims of retaliation, defamation, and/or invasion of privacy because Plaintiff was not terminated or otherwise subject to disciplinary actions due to the ATC's investigation into the incident at The Bulldog.[13] Hebert further objected to the requests because (1) the documents sought were not identified as relevant documents in either party's initial disclosures; (2) accessing and producing responsive documents would impose an undue burden or expense upon Hebert; and (3) Plaintiff and/or his counsel already have responsive information that was obtained through a public records request.[14]

---

[10] R. Doc. 60-3 at 2, 4; *See*, R. Doc. 60-4 at 6-7, 13.
[11] R. Doc. 60-3 at 8-9.
[12] R. Doc. 60-5 at 7.
[13] R. Doc. 82-3 at 2-5, 20-21; R. Doc. 82-4 at 2-5, 7-8.
[14] *Id*.

The information and documents sought by these requests do not appear to be relevant to any of the claims or defenses in this case, as required by Fed. R. Civ. P. 26(b)(1). As Hebert points out, the information and documents sought by Plaintiff regarding the incident that occurred at The Bulldog on January 21, 2012 are completely unrelated to the claims of retaliation, defamation, and invasion of privacy alleged in Plaintiff's Complaint,[15] as amended.[16] There is no mention of Anthony Augustine or The Bulldog in the Complaint[17] or the Amended Complaint.[18] Further, neither the Complaint nor the Amended Complaint allege that Plaintiff suffered any adverse employment action as a result of the ATC's investigation into the incident that occurred at The Bulldog on January 21, 2012.

To the extent Plaintiff asserts the information and documents sought by these requests are relevant to show that his transfer to New Orleans in February 2012 was an act of retaliation by Hebert, this argument lacks merit, as Plaintiff has not asserted a claim related to the transfer to New Orleans. In the Complaint and the Amended Complaint, Plaintiff alleges the following:

> Defendant's retaliation has included, without limitation, the termination of the Plaintiff's employment with ATC for reasons which are false and bogus, and the relentless campaign to discredit Brette Tingle as a witness in litigation presently pending in this court by defaming him and causing false and defamatory statements about him to be published in newspapers and on television stations throughout the State of Louisiana.[19]

Although Plaintiff testified during his deposition on November 29, 2016 that he believes he was transferred to New Orleans in retaliation for an email he sent to Anthony Augustine in February 2012, on which Hebert was copied, expressing Plaintiff's support for Augustine's investigation of

---

[15] R. Doc. 1.
[16] R. Doc. 62.
[17] R. Doc. 1.
[18] R. Doc. 62.
[19] R. Doc. 62 at ¶ 2; *See*, R. Doc. 1 at ¶ 2.

the incident that occurred at The Bulldog,[20] when Plaintiff amended his Complaint several months later on February 2, 2017, Plaintiff did not allege that his transfer to New Orleans in 2012 was an act of retaliation by Hebert. Instead, the Amended Complaint specifically alleges that, "[O]n October 4, 2012, after Hebert had received courtesy copies of the three (3) EEOC charges and learned of Tingle's participation as a witness in the *Charles Gilmore, et al.* EEOC proceeding, Troy Hebert initiated a relentless campaign of retaliation against Brette Tingle."[21] Thus, Plaintiff has alleged that the acts of retaliation did not occur until October 2012, several months after Plaintiff was transferred to New Orleans.

In fact, the allegations in the Amended Complaint seem to contradict that Plaintiff suffered any retaliation for his support of Augustine's investigation into The Bulldog. Plaintiff's assertion that: "In February through September 24, 2012 . . . the New Orleans region as a whole performed very well. Troy Hebert referred to the region as the 'shining star' in the state, and praised the Plaintiff for all that he was doing;"[22] and "On or about June 28, 2012, Troy Hebert approved Tingle's annual performance evaluation and Tingle received the highest rank out of all ATC agents. Tingle's performance was rated as 'outstanding'"[23] suggest that Plaintiff did not view the transfer to New Orleans as retaliation for his support of Augustine. To the contrary, as framed in the Amended Complaint, Plaintiff had a good working relationship with Hebert during this time and it was not until months later (in connection with Plaintiff's involvement in other ATC employees' allegations of discrimination against Hebert) that the retaliatory behavior started. Because it has not been shown that the information and documents sought regarding the ATC's investigation of the incident that occurred at The Bulldog on January 21, 2012 are relevant to any

---

[20] R. Doc. 60-7 at 2-5; *See*, R. Doc. 82-7.
[21] R. Doc. 1 at ¶ 21; R. Doc. 62 at ¶ 21.
[22] R. Doc. 1 at ¶ 15; R. Doc. 62 at ¶ 15.
[23] R. Doc. 1 at ¶¶ 15-16; R. Doc. 16 at ¶¶ 15-16.

of the claims or defenses in this case, Plaintiff's Motion to Compel is denied with regard to Interrogatory Nos. 6 and 7 and Request for Production No. 6.

### B. Plaintiff's Request for All Documents and Written Communications That Mention Plaintiff is Not Proportional to the Needs of This Case and Hebert has Fully Responded to the Request.

Plaintiff also seeks to compel Hebert to respond to Request for Production No. 1, which seeks, "Any and all documents, including without limitation, any and all emails, text messages, facsimile transmissions, memoranda, notes, and letters or any other form of written communications between October 1, 2011 and December 31, 2015 that mention the name 'Brette Tingle' in the body of the document."[24] Plaintiff asserts that these documents are relevant to show Hebert's intentions to retaliate against Plaintiff, as well as when Hebert formed those intentions and how they were expressed.[25] Hebert initially objected to this request as overly broad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence, but produced responsive documents subject to and without waiving those objections.[26]

In a supplemental discovery response, however, Hebert specifically objected to the request, asserting that it is not proportional to the needs of the case because accessing and producing documents responsive to a request for "any and all documents . . . without limitation" bearing Plaintiff's name would impose an undue burden and expense on Hebert.[27] Hebert further objected to the request because it fails to specify a topic or subject matter of the documents and written communications sought and because most of the documents responsive to the request were exchanged in the regular course of business at the ATC and have no bearing on the issues in this

---

[24] R. Doc. 60-4 at 13.
[25] R. Doc. 60-3 at 10.
[26] R. Doc. 60-5 at 9.
[27] R. Doc. 82-4 at 5.

case.[28] Hebert also objected to the time period in the request as overly broad because it encompasses a time period before the alleged retaliatory acts occurred and after Plaintiff was terminated from his employment with ATC.[29] In opposing the Motion to Compel, Hebert further asserts that he has fully and completely responded to this request by producing responsive documents with a privilege log and by producing emails from Hebert's state email account containing or relating to "Brette Tingle" for the requested time period.[30]

A request for "any and all" documents and written communications that Hebert sent or received over a four-year period that reference Plaintiff encompasses a large amount of documents, not all of which are likely relevant. As Hebert points out, because Hebert and Plaintiff both worked at the ATC, many of the documents responsive to this request will be written communications that were exchanged in the regular course of business at the ATC. Additionally, the request is not proportional to the needs of the case. The request is not limited to documents and written communications exchanged between Hebert and a particular sender or recipient, nor is it limited to documents and communications regarding a particular subject, nor is it limited to the time period during which Plaintiff alleges the adverse employment actions occurred. According to the Complaint, the acts of retaliation allegedly occurred between October 4, 2012, when Hebert received copies of the EEOC charges filed by Gilmore, McDowell, and Hingle and learned of Plaintiff's participation as a witness in those proceedings, and Plaintiff's termination on August 18, 2015.[31]

Notwithstanding that Request for Production No. 1 seeks information which may not be relevant and which is not proportional to the needs of the case, it appears that Hebert has fully

---

[28] *Id.*
[29] *Id.* at 5-6.
[30] R. Doc. 82 at 5.
[31] R. Doc. 1 at 5-13; See, R. Doc. 62 at 6-13.

responded to this request by producing over 2,000 pages of emails from Hebert's state email account containing or relating to "Brette Tingle" for the requested time period.[32] Hebert's supplemental discovery response further provides that, "Defendants have conducted a search of communications (including the email account of Troy Hebert) and have produced the documents it could readily locate containing Plaintiff's name or referencing Plaintiff; there may be additional responsive documents, particularly ESI, however, a a [sic] further search for those documents is not proportional to the needs of the case."[33] The Court agrees that a search for additional documents responsive to this request is not proportional to the needs of the case at this time, especially because Plaintiff did not file a reply to address Hebert's assertion that he has fully and completely responded to this request. As such, the Motion to Compel is denied with regard to Request for Production No. 1.

### C. Hebert has Fully Responded to Plaintiff's Request for the Findings of Any ATC Investigations Regarding Whether Persons of Color Were Treated Unfairly and/or in a Discriminatory Manner at the ATC While Hebert Was Commissioner.

Plaintiff also seeks to compel a response to Request for Production No. 7, which seeks, "The findings of any and all investigations and/or reports of investigations by the ATC and/or anyone acting on behalf of the ATC regarding whether persons of color were treated unfairly and/or in a discriminatory manner at/by the ATC during the administration of Troy Hebert as Commissioner."[34] Plaintiff asserts that the documents sought by this request are relevant to show the reasonableness of Plaintiff's belief that Hebert was discriminating against African American ATC employees based on their race, which is an element of Plaintiff's retaliation claim.[35] In response, Hebert asserts that he has fully and completely responded to the request by raising

---

[32] R. Doc. 82 at 5 (*citing* R. Doc. 82-4 at 5-7).
[33] R. Doc. 82-4 at 6-7.
[34] R. Doc. 60-4 at 13.
[35] R. Doc. 60-3 at 10.

specific objections to the request and by referencing documents that were previously produced to Plaintiff's attorney. Hebert further asserts that to his knowledge, there are no other responsive documents and no documents were withheld subject to a privilege.[36]

The Court is not convinced that documents related to other instances of discrimination about which Plaintiff was not aware are actually relevant to any claim or defense in this matter. While it is true that Plaintiff's good faith belief that he was opposing an employment practice made unlawful by Title VII is an element of his claim, he obviously could not have formed that belief based on acts about which he had no knowledge at the time. In other words, the protected activity in which Plaintiff claims to have engaged is related to specific ATC employees, thus, it is not clear why information about potentially unlawful actions against other employees of which Plaintiff had no knowledge would have any bearing on Plaintiff's claims. Even if the documents were relevant, the request is not proportional as it is not limited to the time period during which Plaintiff alleges the retaliation took place. Regardless, Hebert has produced documents responsive to this request and claims that there are no other responsive documents in his possession. As previously mentioned, Plaintiff did not file a reply to address Hebert's assertion that he has fully and completely responded to this request by producing responsive documents. Plaintiff also has not asserted that a search for additional documents responsive to this request is warranted at this time. As such, the Court finds Hebert's response is sufficient. The Motion to Compel is therefore denied with regard to Request for Production No. 7.

---

[36] R. Doc. 82 at 5 (*citing* R. Docs. 82-3 at 21 and 82-4 at 8-9).

**D. Hebert has Fully Responded to Plaintiff's Request for Documents Regarding Requests by Hebert to the LDR for Investigation Into Whether Plaintiff Endangered the Life of Laurie Duhé Claiborne.**

Plaintiff also seeks to compel Hebert to respond to Request for Production No. 11, which seeks, "Any and all documents referring and/or relating to any and all requests by Troy Hebert to Louisiana Department of Revenue for investigation (s) as to whether Brette Tingle endangered Laurie Duhé Claiborne."[37] Plaintiff asserts that the documents requested are relevant to Hebert's credibility regarding whether it was Plaintiff, rather than Hebert, who put Claiborne, an African American former ATC agent, in harm's way by ordering her to conduct inspections in uniform at the same establishments where she had previously worked undercover in plain clothes.[38] In response, Hebert asserts that he has fully and completely responded to the request by producing the only document Hebert could locate that was responsive to the request.[39]

Hebert states that he has produced a document in response to the request, which he claims is the only responsive document in his possession. Because Plaintiff did not file a reply to address Hebert's assertion that he has fully and completely responded to this request, the Court finds that Hebert's response to Request for Production No. 11 is sufficient. As such, the Motion to Compel is denied with regard to Request for Production No. 11.

Since the Motion to Compel is denied, Plaintiff's request for the reasonable expenses and attorney's fees incurred in filing the Motion to Compel[40] is also denied. *See*, Fed. R. Civ. P. 37(a)(5)(C).

---

[37] R. Doc. 60-4 at 14.
[38] R. Doc. 60-3 at 10.
[39] R. Doc. 82 at 6 (*citing* R. Doc. 82-8).
[40] R. Doc. 60 at 1.

### III. Conclusion

For the reasons set forth herein, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Compel[41] is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's request for reasonable expenses and attorney's fees under Fed. R. Civ. P. 37(a)(5)(A) is **DENIED**.

Signed in Baton Rouge, Louisiana, on June 8, 2017.

**ERIN WILDER-DOOMES**
**UNITED STATES MAGISTRATE JUDGE**

---

[41] R. Doc. 60.