# UNITED STATES DISTRICT COURT

## MIDDLE DISTRICT OF LOUISIANA

**BRETTE TINGLE**                                                    **CIVIL ACTION**

**VERSUS**                                                          **NO. 15-626-JWD-EWD**

**TROY HEBERT, IN HIS INDIVIDUAL
CAPACITY AND IN HIS OFFICIAL
CAPACITY AS THE COMMISSIONER
OF THE OFFICE OF ALCOHOL AND
TOBACCO CONTROL OF THE LOUISIANA
DEPARTMENT OF REVENUE, ET AL.**

## RULING AND ORDER ON DEFENDANTS' MOTION FOR CONTEMPT AND MOTION TO REOPEN DISCOVERY

Before the Court are two motions filed by Troy Hebert and The Louisiana Office of Alcohol and Tobacco Control (the "ATC") (collectively, "Defendants"), a Motion for Contempt of Court[1] and a Motion to Re-Open Discovery for Limited Purposes.[2] Both motions are opposed by plaintiff, Brette Tingle,[3] and Defendants have filed a Reply in support of each motion.[4]

In the Motion for Contempt, Defendants ask this Court to order an independent forensic examination of Plaintiff's personal cell phone and personal email accounts due to Plaintiff's alleged failure to comply with two discovery orders previously issued by the Court.[5] Defendants also ask that sanctions be imposed upon Plaintiff and his counsel, including an award of attorney's fees and the costs incurred in filing the Motion for Contempt.[6] In the Motion to Re-Open Discovery, Defendants seek an order reopening discovery in this matter for the limited purpose of

---

[1] R. Doc. 125.
[2] R. Doc. 130.
[3] *See*, R. Docs. 129 and 136.
[4] *See*, R. Docs. 135 and 141.
[5] *See*, R. Docs. 98 and 111.
[6] R. Doc. 125 at p. 1.

determining whether Plaintiff's counsel sought and obtained confidential, privileged information from Brian DeJean, a former ATC attorney, regarding the Defendants.[7]  The undersigned held a telephone conference on December 5, 2017 to discuss the pending motions, after which the matter was taken under advisement.[8]

For the reasons stated below, the Motion for Contempt of Court and the Motion to Re-Open Discovery for Limited Purposes are **DENIED**.  Defendants' request for sanctions under Fed. R. Civ. P. 37(b)(2)(A), including the reasonable attorney's fees and costs incurred in filing the Motion for Contempt of Court, is also **DENIED.**

## I.     Background

On September 16, 2015, Plaintiff filed a Complaint in this Court against Hebert, asserting claims of retaliation under 42 U.S.C. §§ 1981 and 1983, invasion of privacy under the United States and Louisiana Constitutions, and defamation under Louisiana law.[9]  In the Complaint, Plaintiff alleges that he was terminated from his employment with ATC by Hebert in retaliation for his participation as a witness in race discrimination charges filed by three of his former co-workers against the ATC with the EEOC and his participation as a witness in the ensuing litigation against the ATC and Hebert in that matter (the "*Gilmore* case").[10]  Plaintiff also asserts that he was terminated in retaliation for his participation as a witness in litigation against the Louisiana Department of Revenue brought by another former co-worker, Randall Kling, who claims Hebert retaliated against him by terminating Kling's employment with the ATC after Kling complained of Hebert's discriminatory practices at the ATC.[11]

---

[7] R. Doc. 130.
[8] *See,* R. Docs. 144, 147, 148, 150.
[9] R. Doc. 1.
[10] R. Doc. 1 at ¶¶ 3 and 42.
[11] R. Doc. 1 at ¶¶ 4 and 42.  The ATC was named as an additional defendant in Plaintiff's Amended and Supplemented Complaint, which was filed into the record on February 2, 2017.  *See,* R. Doc. 62.

## II. DEFENDANTS' MOTION FOR CONTEMPT OF COURT

### A. The Arguments of the Parties

On October 4, 2017, Defendants filed the instant Motion for Contempt of Court, asserting that Plaintiff has failed to produce any text messages from his personal cell phone, emails from his personal email accounts or documents or text messages that were deleted from Plaintiff's ATC-issued cell phone prior to returning the phone to the ATC, despite being ordered to do so by this Court on two separate occasions.[12] On June 9, 2017, the undersigned issued a Ruling and Order on Defendants' Motion to Compel and for Attorney's Fees,[13] ordering Plaintiff to produce:

> any text messages or emails that Plaintiff exchanged with former or current ATC employees on Plaintiff's personal cell phone, or any of Plaintiff's personal email addresses, or any text messages or emails that were deleted from Plaintiff's ATC-issued cell phone prior to Plaintiff returning the cell phone to the ATC, for the time period between August 22, 2012 and August 18, 2015 that reference or discuss Troy Hebert or race discrimination at ATC.[14]

Shortly thereafter, defense counsel sent correspondence to the undersigned on July 27, 2017[15] and August 15, 2017,[16] asserting that Plaintiff had failed to comply with the June 9, 2017 Discovery Order. Defense counsel alleged that Plaintiff had failed to produce any new text messages or emails pursuant to the June 9, 2017 Discovery Order, and had instead produced a summary or chart containing 15 text messages that were previously produced to Defendants during discovery.[17] Defense counsel also complained that Plaintiff's supplemental discovery responses were equivocal because each responses stated that it was "based on the best knowledge of the Plaintiff's attorneys at this time."[18] The undersigned held a telephone conference on August 16,

---

[12] R. Doc. 125.
[13] R. Doc. 59.
[14] R. Doc. 98 at p. 13.
[15] R. Doc. 108.
[16] R. Doc. 109.
[17] R. Doc. 125-1 at pp. 3-4.
[18] R. Doc. 108 at pp. 3-4.

2017 to discuss these issues, as well as defense counsel's request to broaden the scope of the June 9, 2017 Discovery Order.[19]  As a result of the telephone conference, the undersigned issued an Order on August 16, 2017, slightly expanding the scope of the June 9, 2017 Discovery Order by ordering Plaintiff to produce:

> any text messages or emails that Plaintiff exchanged with former or current ATC employees on Plaintiff's personal cell phone or any of Plaintiff's personal email addresses, any text messages or emails that were deleted from Plaintiff's ATC-issued cell phone prior to Plaintiff returning the cell phone to the ATC, and any messages sent or received by any of Plaintiff's social media accounts, for the time period between October 3, 2011 and August 18, 2015 that reference or discuss Troy Hebert in any manner, race discrimination at ATC, or Plaintiff's claims of retaliation, defamation and invasion of privacy.[20]

Plaintiff was specifically ordered to produce the actual email, text message or social media message if any additional responsive documents were found.[21]  The undersigned, however, declined defense counsel's request to order a forensic examination of Plaintiff's personal cell phone, personal email addresses and Plaintiff's ATC-issued cell phone to determine the existence of any electronic communications that should have been produced by Plaintiff pursuant to the June 9, 2017 Discovery Order, explaining that any request for a forensic examination must be raised in a motion to the Court.[22]  However, Plaintiff's counsel was ordered to provide a verification by September 14, 2017, stating that Plaintiff and his counsel "have reviewed all of Plaintiff's emails, text messages and social media messages, as well as any emails and text messages deleted from Plaintiff's ATC-issued cell phone prior to returning the phone to the ATC, for the pertinent time

---

[19] R. Doc. 111.
[20] R. Doc. 111 at p. 5.  Plaintiff's counsel agreed to the expanded scope of the June 9, 2017 Discovery Order during the August 16, 2017 telephone conference.  *Id.* at pp. 3-4.
[21] *Id.*
[22] *Id.* at p. 2.

period and verifying that all responsive documents have been produced."[23]  On September 14, 2017, Plaintiff and his counsel filed verifications into the record stating that they had reviewed all of Plaintiff's emails, text messages and social media messages, as well as text messages deleted from Plaintiff's ATC-issued cell phone prior to returning the phone to the ATC, and that all responsive documents had been produced.[24]

In the instant Motion for Contempt, Defendants allege that Plaintiff has refused to comply with the undersigned's June 9th and August 16th Discovery Orders because Plaintiff has not produced any text messages, emails or social media messages pursuant thereto.  Defendants specifically take issue with Plaintiff's failure to produce emails and text messages in which Plaintiff forwarded news articles about Defendants to former ATC employees, alleging that Plaintiff's counsel admitted to possessing such communications during the August 16, 2017 telephone conference and had agreed to produce them.[25]  Defendants also question the veracity of Plaintiff's August 2, 2017 deposition testimony, during which Plaintiff stated that he has had only limited interactions with Brian DeJean, a former ATC attorney, since DeJean left the ATC.[26] Defendants assert that Plaintiff's testimony is contradicted by Facebook messages produced by DeJean at his September 12, 2017 deposition, which show communications between Plaintiff and DeJean from June 18, 2014 to September 19, 2016 pertaining to Hebert, Plaintiff's civil service

---

[23] *Id.*
[24] R. Docs. 113 and 114.  Plaintiff's verification also states that, "I am producing herewith Facebook messages for Facebook communications with Brian DeJean.  These Facebook messages were provided to me on September 13, 2017 by my attorney J. Arthur Smith, II, who, I understand, received them from Brian DeJean at Mr. DeJean's deposition of September 12, 2017.  R. Doc. 114 at p. 1.
[25] R. Doc. 125-1 at pp. 4-5 and 7.
[26] *Id.* at pp. 5-6 (*citing* R. Doc. 125-2 at pp. 2-3).  Although Defendants assert that, "Plaintiff denied having any other interaction, *including exchanging text or email messages with DeJean*," the exhibit attached to the Motion does not support this assertion.  R. Doc. 125-1 at p. 6 (emphasis added).  During the deposition, Plaintiff was merely asked, "Since Mr. DeJean left the ATC, have you had any interaction with him?"  R. Doc. 125-2 at p. 2, lines 22-23.  Plaintiff responded that he had seen DeJean once at the Department of Revenue and twice during the *Gilmore* trial, and that the two had exchanged general pleasantries.  R. Doc. 125-2 at pp. 2-3.  Thus, it does not appear the question was specifically asked of Plaintiff whether he exchanged electronic communications with DeJean as explicitly as the Defendants have presented it in their Motion.

hearing and the termination of an ATC employee.[27]  Defendants contend that these messages are relevant to Plaintiff's retaliation claim and are, "exactly the type of communications Defendants expected to exist between Plaintiff and ATC employees and they are precisely the sort of emails requested by Defendant's requests for production of documents and ordered to be produced by the Court's June 9, 2017, Order."[28]  Defendants further assert that the verifications provided by Plaintiff and his counsel are "equivocal, evasive and lead to the conclusion that they either have not searched Plaintiff's text and email messages for responsive documents and/or they have responsive text and email messages they have not produced."[29]

Based on the foregoing, Defendants filed the instant Motion for Contempt asking this Court to: (1) conduct an evidentiary hearing to determine what efforts Plaintiff and his counsel have taken to comply with the Court's June 9, 2017 Discovery Order; (2) order an independent forensic examination of Plaintiff's personal cell phone and personal email accounts at Plaintiff's expense; (3) conduct an *in camera* review of the documents found as a result of the forensic examination, as well as the documents deleted from Plaintiff's ATC-issued cell phone prior to Plaintiff returning the phone to the ATC; (4) impose sanctions against Plaintiff and his counsel; and (5) award Defendants the costs and attorney's fees incurred in connection with obtaining the responsive documents.

In opposition, Plaintiff asserts that the Motion for Contempt should be denied because his counsel has conducted a diligent search of all emails, text messages, Facebook messages and social media messages and no additional responsive documents have been found.[30]  With respect to his Facebook messages with DeJean, Plaintiff asserts that he previously testified in this case that he

---

[27] *Id*. at pp. 6-7 (*citing* R. Doc. 125-4).
[28] R. Doc. 125-1 at p. 6.
[29] R. Doc. 125-1 at p. 9.
[30] R. Doc. 129 at p. 1.

rarely uses Facebook and that he did not retain any of his Facebook messages. Plaintiff asserts that his actions are reasonable because he had no reason to believe the Facebook messages between himself and DeJean were relevant to this litigation.[31] Plaintiff further asserts that although his counsel previously believed that he was in possession of emails in which news articles were forwarded to former and/or current ATC employees, Plaintiff cannot locate any such messages but acknowledges that he sent copies of newspaper articles about Hebert's misconduct to friends.[32] Plaintiff contends that a forensic examination of his personal cell phone and email accounts will do nothing but increase the costs of this litigation.

In response, Defendants assert that Plaintiff's opposition raises more questions than it answers, including whether Plaintiff deleted or destroyed electronic communications after being instructed to preserve such evidence.[33] Defendants again emphasize that Plaintiff has not produced any text messages or emails in response to the Court's June 9th or August 16th Discovery Orders.[34] In addition to the remedies originally sought in the Motion for Contempt, Defendants ask that the Court order a forensic examination of "any and all computers that [Plaintiff] has used to log on to Facebook Messenger and/or his personal email accounts; in addition, the Court should allow Defendants to issue a subpoena to yahoo, gmail and Facebook in order to obtain responsive emails directly through the email providers."[35]

---

[31] *Id*. at pp. 1-2.
[32] *Id*. at p. 2.
[33] R. Doc. 135. Defendants have submitted a portion of the transcript from Plaintiff's November 30, 2015 deposition, taken in connection with the *Gilmore* matter, in which defense counsel stated the following: "I'm going to instruct you to not delete any text messages that you have exchanged, either with the Plaintiffs or any former or current ATC employees, and to hold and preserve all text messages and e-mails that you have exchanged as a part of the litigation hold. And I'll send a litigation hold note to your counsel as part of your claims against the ATC and/or Commissioner Hebert." R. Doc. 135-2 at p. 2, lines 15-23. Defendants have not provided any evidence that a litigation hold was ever sent to Plaintiff's counsel in this matter.
[34] R. Doc. 135 at p. 2. While Defendants acknowledge that on October 25, 2017, Plaintiff's counsel produced four emails from Plaintiff's personal email accounts, Defendants assert that the emails do not fit within the parameters of the two Discovery Orders. *Id*. at n. 1.
[35] R. Doc. 135 at p. 6.

### B. Law and Analysis

#### 1. Defendants' Request for Sanctions

"Federal district courts have the inherent power, as well as the authority expressly granted under the Federal Rules of Civil Procedure, to impose sanctions where warranted." *Reyes v. Julia Place Condominiums Homeowners Association, Inc*., Civ. A. No. 12-2043, 2016 WL 5871278, at *2 (E.D. La. Oct. 7, 2016). Under Federal Rule of Civil Procedure 37(b)(2)(A), if a party "fails to obey an order to provide or permit discovery . . . the court where the action is pending may issue further just orders" including "(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part; (vi) rendering a default judgment against the disobedient party; or (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination." Fed. R. Civ. P. 37(b)(2)(A); *See also, Smith & Fuller v. Cooper Tire & Rubber Co*., 685 F.3d 486, 488 (5th Cir. 2012) ("'Fed. R. Civ. P. 37(b) empowers the courts to impose sanctions for failures to obey discovery orders. In addition to a broad range of sanctions, including contempt, Fed.R.Civ.P. 37(b)(2) authorizes the court to impose a concurrent sanction of reasonable expenses, including attorney's fees, caused by the failure to obey a discovery order.'" (quoting *Falstaff Brewing Corp. v. Miller Brewing Co*., 702 F.2d 770, 784 (9th Cir. 1983))).

While a district court has "broad discretion" in fashioning remedies suited to the misconduct, usually a finding of bad faith or willful misconduct is necessary to support the severest remedies set forth in Rule 37(b)(2)(A). *Smith & Fuller*, 685 F.3d at 488 (quotation omitted).

"Lesser sanctions do not require a finding of willfulness." *Id*. However, "[f]or a court to impose sanctions under Rule 37(b) . . . there must be a violation of a discovery order . . . ." *Reyes*, 2016 WL 5871278, at *2. "A district court's Rule 37(b)(2) sanction order generally must meet two standards: '[f]irst, any sanction must be 'just'; second, the sanction must be specifically related to the particular 'claim' which was at issue in the order to provide discovery.'" *Keybank National Assoc. v. Perkins Rowe Assoc., LLC*, 539 Fed. Appx. 414, 419 (5th Cir. 2013) (quoting *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 707, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982)).

Here, Defendants have not shown that Plaintiff has actually violated the undersigned's June 9th or August 16th Discovery Orders by failing to produce any text messages or emails from his personal cell phone and personal email accounts, or by failing to produce any documents, text messages or emails that were deleted from his ATC-issued phone prior to returning the phone to the ATC. Defendants' primary argument is that Plaintiff has failed to comply with the undersigned's Discovery Orders because he did not produce certain emails and text messages that his counsel had previously admitted to possessing and agreed to produce, and because Plaintiff failed to produce Facebook messages he exchanged with DeJean until after such messages were produced by DeJean. With respect to Defendants' first contention, Plaintiff's counsel never represented that he had such messages in his possession. As the undersigned pointed out during the December 5, 2017 telephone conference,[36] when Plaintiff's counsel was asked during the August 16, 2017 telephone conference whether he expected to have any additional production of information related to the June 9th Discovery Order, Plaintiff's counsel stated the following:

> No, your Honor. I have reviewed . . . Mr. Tingle was here recently in town on the *Gilmore* matter and I reviewed that in detail with him. There's no additional text messages to produce. The only thing he's

---

[36] *See*, recording from the December 5, 2017 telephone conference, beginning at the 3:25 mark.

> mentioned to me is there's some instances where he would send a
> copy of a newspaper article or something of that nature to someone
> else but with no text in it or no writing or anything like that just
> transmitting that so that's the only thing that I am aware of. We've
> looked at this over and over again. I did sit down with him and we
> confirmed the accuracy of the statement we made and that
> response.[37]

Plaintiff's counsel subsequently stated during the August 16, 2017 telephone conference that he had not produced those messages because he did not think they were within the scope of the Court's June 9th Discovery Order.[38] Upon request, Plaintiff's counsel voluntarily agreed to produce those messages.[39] However, in opposing the Motion for Contempt, Plaintiff's counsel has now represented to the Court that while he previously believed that Plaintiff may have possessed those emails and text messages in which Plaintiff forwarded news articles about Defendants to former ATC employees, Plaintiff cannot locate any of the messages, but acknowledges that he sent copies of newspaper articles about Hebert's misconduct to friends.[40] Plaintiff's counsel has also represented to the Court that Plaintiff rarely uses Facebook and did not retain any of his Facebook messages because he had no reason to believe the messages between himself and DeJean were relevant to this litigation.[41]

More importantly, however, Plaintiff's counsel represented to the Court on the record during the December 5, 2017 telephone conference that no responsive documents have been withheld from the Defendants on the basis of an objection.[42] Other than Defendants' assertion that Plaintiff is intentionally withholding responsive documents, the Court has no reason to doubt the representations made by Plaintiff's counsel. This is especially true in light of the fact that Plaintiff

---

[37] *See*, recording from August 16, 2017 telephone conference, beginning at the 5:04 mark.
[38] *Id*.
[39] *Id*.
[40] *See*, R. Doc. 129 at p. 2.
[41] R. Doc. 129 at pp. 1-2.
[42] *See*, recording from the December 5, 2017 telephone conference, beginning at the 12:51 mark.

and his counsel have filed verifications into the record stating that they have conducted a diligent search of Plaintiff's text messages, emails and social media messages, including emails and text messages deleted from Plaintiff's ATC-issued cell phone prior to returning the cell phone to the ATC, and that no further responsive documents were found.[43]  Although Defendants assert that the verifications are equivocal and evasive because Plaintiff's verification states, "I am not in the possession of any additional documents that are responsive to the Defendants' discovery requests, other than those to which my attorney has made formal objections,"[44] the verification filed by Plaintiff's counsel states that, "to the best of my knowledge, information and belief, all responsive documents have been produced to the defendants in this case."[45]  Additionally, as previously discussed, Plaintiff's counsel has represented to the Court on the record that no responsive documents have been withheld from the Defendants.

The Court lacks the authority to compel the production of documents that Plaintiff and his counsel assert do not exist.  *See*, *Payne v. Forest River, Inc.*, Civ. A. No. 13-679-JJB-RLB, 2015 WL 1912851, at *4 (M.D. La. Apr. 22, 2015) ("The court cannot order the production of documents that no longer exist or, despite a diligent search, cannot be found in the possession, custody, or control of a party."); *Solorzano v. Shell Chem. Co.,* Civ. A. No. A.99-2831, 2000 WL 1145766, at *7 (E.D. La. Aug. 14, 2000) ("A party or non-party 'cannot produce what it does not have.'").  While Defendants assert that additional responsive communications must exist in light of the Facebook messages produced by DeJean, such argument is mere speculation on Defendants' part.  Further, although Defendants cite a Facebook comment thread to show that deleted Facebook messages can be retrieved,[46] the Facebook "Help Center" specifically states that, "Deleting a

---

[43] R. Docs. 133 and 114.
[44] R. Doc. 114 at p. 2.
[45] R. Doc. 113 at p. 1.
[46] R. Doc. 135 at p. 3 (*See* attached document entitled, "How to recover deleted facebook messages?").

message permanently removes it from your inbox."[47]

Based on the foregoing, Defendants have not shown that Plaintiff has failed to comply with the undersigned's June 9th or August 16th Discovery Orders to warrant the imposition of sanctions in this case. To the extent Defendants suggest that Plaintiff may have deleted or destroyed emails, text messages or Facebook messages after being instructed to preserve and produce such evidence,[48] the issue of spoliation of evidence has not been briefed by the parties and, therefore, is not properly before the Court in the Motion for Contempt.

### 2. Defendants' Request for a Forensic Examination of Plaintiff's Personal Cell Phone and Personal Email Accounts

Because Plaintiff has complied with the Court's June 9th and August 16th Discovery Orders, Defendants' request for relief in the Motion for Contempt, including the request for the Court to order a forensic examination of Plaintiff's personal cell phone and personal email accounts, and to conduct an *in camera* review of any messages found during the forensic examination and of the documents or messages deleted from Plaintiff's ATC-issued cell phone prior to Plaintiff returning the cell phone to the ATC, is denied. As an initial matter, Defendants have not shown that a forensic examination is warranted in this case. Tellingly, Defendants cite no law in the Motion for Contempt to support their request for a forensic examination. Although one case is cited in their Reply brief, *NOLA Spice Designs, LLC v. Haydel Enterprises, Inc.*, Civ. A. No. 12-2515, 2013 WL 3974535 (E.D. La. Aug. 2, 2013),[49] that case does not support Defendants' request for a forensic examination in this case.

In *NOLA Spice*, the Eastern District held that although the defendant's request for a forensic examination of the plaintiff's computers was within the scope of Electronically Stored Information

---

[47] *See*, Help Center page on www.facebook.com or https://www.facebook.com/help/messenger-app.
[48] R. Doc. 135 at p. 1.
[49] R. Doc. 135 at pp. 4-5.

("ESI") discovery contemplated by Fed. R. Civ. P. 34(a)(1)(A), such requests are also subject to the proportionality limitations applicable to all discovery under Rule 26(b)(2)(C). 2013 WL 3974535, at *2. The *NOLA Spice* court pointed out that the Official Advisory Committee Notes to the 2006 Amendments to Rule 34 relating to electronic discovery specifically caution:

> "As with any other form of discovery, issues of burden and intrusiveness raised by requests to test.. [sic] can be addressed under Rules 26(b)(2) and 26(c). The addition of testing and sampling to Rule 34(a)with regard to ... electronically stored information is not meant to create a routine right of direct access to a party's electronic information system, although such access might be justified in some circumstances. Courts should guard against undue intrusiveness resulting from inspecting or testing such systems."

*Id.* (*quoting* Advisory Committee Notes to 2006 Amendments, quoted in *Federal Civil Judicial Procedure and Rules* at p. 192 (Westlaw Pamph. 2013 ed.)). The *NOLA Spice* court explained that, "mere skepticism that an opposing party has not produced all relevant information" and "a mere desire to check that the opposition has been forthright in its discovery responses" are not sufficient reasons to warrant drastic discovery measures like an exhaustive computer forensic examination. 2013 WL 3974535, at *2 (quoting *John B. v. M.D. Goetz, Jr.*, 531 F.3d 448, 459-60 (6th Cir. 2008) and *Memry Corp. v. Kentucky Oil Technology, N.V.*, Civ. A. No. C04-03843 RMW (HRL), 2007 WL 832937, at *3 (N.D. Cal. March 19, 2007), respectively). "Instead, courts have permitted restrained and orderly computer forensic examinations where the moving party has demonstrated that its opponent has defaulted in its discovery obligations by unwillingness or failure to produce relevant information by more conventional means." *NOLA Spice*, 2013 WL 3974535, at *3 (citing *White v. Graceland College Center etc.*, Civ. A. No. 07-2319-CM, 2009 WL 722056, at *7 (D. Kan. Mar. 18, 2009)).

In *NOLA Spice*, the court found that the plaintiff had not willfully defaulted on its discovery obligations in a way that would justify the requested forensic examination. 2013 WL 3974535, at

*3.  Specifically, the court found that the evidentiary materials submitted in support of the defendant's motion, including the plaintiff's discovery responses, verifications and sworn deposition testimony, "fall far short of establishing the kind of willful default or failure to respond to discovery requests that other courts have required before ordering forensic computer examinations."  *Id*.  The *NOLA Spice* court also found that defendant's own arguments expressed the kind of "mere skepticism" and "mere desire to check that the opposition has been forthright in its discovery responses" that are insufficient to compel an intrusive computer forensic examination.  *Id*.  According to the *NOLA Spice* court, "These assertions include that Haydel 'has good reasons to *believe* that *something* in Plaintiff's statements is not true;' that it has '*suspected* all along' that its opponents have records that they refuse to produce; that it '*believes* [its opponents] make representations of one nature to the Court, another to Haydel and still another . . . to the Internal Revenue Service."  *Id*. (citation omitted) (emphasis in original).  The *NOLA Spice* court explained, "The thrust of Haydel's complaints about Nola's discovery responses is that . . . Haydel has not received information or materials it suspects should exist and which it insists Nola and Duarte must have if they are to prove their case, but which Nola and Duarte say—under oath— they do not possess."  2013 WL 3974535, at *4.  The court concluded that although it benefits the defense if the plaintiffs have no financial documents sufficient to support their claims or in the form or format defendant thinks exist, that is not a basis for ordering a forensic examination "which at least one circuit court has described as 'drastic.'"  *Id*. (citing *McCurdy Group*, *LLC v. Am. Biomedical Group, Inc*., 9 Fed. Appx. 822, 831 (10th Cir. 2001)).

As previously discussed, the crux of the instant Motion for Contempt is Defendants' belief that Plaintiff has failed to comply with the undersigned's June 9th and August 16th Discovery Orders because Plaintiff has not produced emails or text messages that his counsel previously

stated Plaintiff possessed and which counsel agreed to produce (*i.e.,* emails and text messages forwarding news articles about Defendants to former ATC employees), and because Plaintiff did not produce Facebook messages he exchanged with Brian DeJean until after such messages had been produced by DeJean. As in *NOLA Spice*, Defendants' argument that additional responsive documents must exist based upon the existence of the Facebook messages with DeJean is the kind of "mere skepticism that an opposing party has not produced all relevant information" that is insufficient to warrant a forensic examination of Plaintiff's personal cell phone and personal email accounts. *NOLA Spice*, 2013 WL 3974535, at *2 (quoting *John B. v. M.D. Goetz, Jr.*, 531 F.3d 448, 459-60 (6th Cir. 2008)). Further, as previously discussed, Defendants have not shown that Plaintiff has withheld responsive documents, as was the case in *Timms v. LZM, L.L.C.* 657 Fed. Appx. 228 (5th Cir. 2016). There, the Fifth Circuit affirmed the district court's decision ordering a forensic examination of the plaintiff's phone and inspection of any and all text messages and communications between plaintiff and her former co-workers, where the plaintiff had testified during a deposition that she had the text messages in her possession, but subsequently produced paper copies of said text messages that were missing at least two text messages plaintiff was known to have. *Id.* at 229, n. 1.

Defendants have also made no showing that the requested forensic examination of Plaintiff's personal cell phone and personal email accounts are proportional to the needs of this case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1). As an initial matter, Defendants have made no representations to the Court that they have conducted an examination of the ATC-issued cell

phone that belonged to Plaintiff, which has been in the ATC's possession since February 25, 2015.[50] Such assertions would help establish Defendants' claims that there is missing information or missing documents that have not been produced by Plaintiff. In *Frees, Inc. v. McMillian*, for example, a case involving computer fraud, the Western District of Louisiana compelled the defendant to produce a laptop provided by his new employer and a personal computer hard drive in his possession only *after* the plaintiff had conducted a search of the defendant's laptop that was in the plaintiff's possession. Civ. A. No. 05-1979, 2007 WL 184889 (W.D. La. Jan. 22, 2007), *aff'd by* 2007 WL 1308388 (W.D. La. May 1, 2007). According to the Memorandum Order in that case, the plaintiff had provided the defendant with a laptop computer for use in connection with his work, which was repossessed in connection with defendant's termination and subsequently examined by plaintiff. 2007 WL 184889, at *1. That examination, however, "revealed that much of Frees' proprietary information was missing from the laptop." *Id.* As a result, the court held that, "Frees is entitled to production of the requested computers because such computers are, if Frees' allegations are true, among the most likely places McMillian would have downloaded or stored the data allegedly missing from Frees' laptop. As such, the request is reasonably calculated to lead to the discovery of admissible evidence." *Id.* at *2. Unlike the plaintiff in *Frees, Inc.*, Defendants have not shown that their request for a forensic examination of Plaintiff's personal computers or phones is warranted in light of the fact that Defendants have not even conducted such a search of Plaintiff's ATC-issued cell phone, which has been in the Defendants' possession for

---

[50] *See*, R. Doc. 59-2 at pp. 6-7, Defendant's First Request for Production of Documents Propounded Upon Plaintiff, which provides the following:

> **Request for Production No. 11:**
> Produce written copies of all text messages from your ATC issued cellular phone sent or received from January 1, 2012, through February 25, 2015.
> **Request for Production No. 12:**
> Produce copies of any emails, text messages, data, pictures, information or documents deleted from your ATC issued iPhone/ cellular phone downloaded, printed or copied before returning the phone to the ATC in February 2015.

over three years.

Further, "The utility of permitting a forensic examination of personal cell phones must be weighed against inherent privacy concerns." *John Crane Group Corp. v. Energy Devices of Texas, Inc.*, Civ. A. No. 6:14-CV-178, 2015 WL 11089486, at *3 (E.D. Tex. Feb. 2, 2015). Defendants have not addressed the inherent privacy concerns raised by the request for a forensic examination of Plaintiff's personal cell phone and personal email accounts, much less those raised by Defendants' subsequent request in their Reply brief for a broader forensic examination of "any and all computers that [Plaintiff] has used to log on to Facebook Messenger and/or his personal email accounts."[51] As such, for the same reasons set forth by the Eastern District in *NOLA Spice*, Defendants have not met their burden of showing that a forensic examination is warranted in this case.[52]

## III.    DEFENDANTS' MOTION TO REOPEN DISCOVERY

### A.  The Arguments of the Parties

In addition to the Motion for Contempt, Defendants seek to reopen discovery to determine whether Plaintiff's counsel sought and obtained privileged information regarding the Defendants from Brian DeJean, a former ATC attorney.[53] Defendants allege that DeJean testified during his deposition on September 12, 2017 that he met with Plaintiff's counsel, J. Arthur Smith, III, prior to the *Gilmore* trial, but that DeJean could not recall the date of the meeting or how it was arranged. Defendants claim that DeJean also testified that he had other communications with Plaintiff's counsel, J. Arthur Smith, IV and Jennifer Valois, both of whom also represented the plaintiffs in

---

[51] R. Doc. 135 at p. 6.
[52] In their Reply brief, Defendants also request that they be allowed to "issue a subpoena to yahoo, gmail and Facebook in order to obtain responsive emails directly through the email providers." *Id.* However, this remedy was not requested in the Motion for Contempt and, therefore, is not properly before the Court.
[53] R. Doc. 130.

the *Gilmore* matter.[54]  Defendants complain that DeJean was unable to provide any specifics as to his meeting with Plaintiff's counsel.[55]  Defendants also complain that when presented with the transcript of a text message purportedly exchanged between DeJean and Charles Gilmore on October 12, 2012, DeJean refused to identify which, if any, of the statements were made by him and Plaintiff's counsel questioned the authenticity of the text message even though the text message was produced by Plaintiff's counsel in the *Gilmore* matter.[56]

Defendants further assert that during the deposition, Plaintiff's counsel asked DeJean if Hebert had ever asked him for legal advice regarding constitutional issues and asked about Hebert's reaction while discussing those issues.[57]  Defendants allege that such lines of questioning demonstrate that DeJean told Plaintiff's counsel about discussions he had with Hebert, which are subject to the attorney-client privilege.  Defendants also question whether the Facebook messages exchanged between Plaintiff and DeJean (the same Facebook messages at issue in the Motion for Contempt) were attempts by Plaintiff to elicit information from DeJean undertaken at the direction of Plaintiff's counsel.  As such, Defendants seek to reopen discovery to explore the communications and interactions between DeJean and Plaintiff's counsel by (1) deposing Plaintiff, J. Arthur Smith, III (Plaintiff's counsel), and Charles Gilmore; (2) obtaining all notes concerning DeJean in Plaintiff's counsel's possession; and (3) if necessary, conduct additional, limited discovery to determine whether and to what extent counsel for the Plaintiff may be in possession of confidential, privileged information of the Defendants.[58]

---

[54] R. Doc. 130-1 at p. 3 (*citing* R. Doc. 130-2 at p. 11).
[55] R. Doc. 130-1 at p. 4.  Defendants note that DeJean was argumentative with defense counsel and testified that he could not recall critical facts about his communications with Plaintiff's counsel in response to at least 25 questions posed by defense counsel, but he was able to fully respond to all of the questions posed by Plaintiff's counsel.  *Id.* at n. 4 (*citing* R. Doc. 130-2 at pp. 32-52).
[56] R. Doc. 130-1 at p. 4 (*citing* R. Doc. 130-7).
[57] R. Doc. 130-1 at p. 5 (*citing* R. Doc. 130-2 at pp. 36-46).
[58] R. Doc. 130.

In response, Plaintiff asserts that his counsel had one meeting to prepare DeJean as a witness in the *Gilmore* trial and that DeJean exchanged text messages with J. Arthur Smith, IV, which have been produced to Defendants.[59]  Plaintiff alleges that Defendants deposed DeJean out of fear that some privileged information may have been disclosed to Plaintiff's counsel, and that Defendants now want to reopen discovery because they simply do not like DeJean's deposition testimony.  Plaintiff asserts that the additional discovery requested is not proportional to the needs of the case, as required by Fed. R. Civ. P. 26, since Defendants fail to assert how any alleged undisclosed communications with DeJean will support a defense of Hebert or of the ATC against Plaintiff's invasion of privacy, defamation and retaliation claims.  Plaintiff asserts that DeJean did not disclose any attorney-client privileged information, noting that DeJean specifically testified that, "I don't believe that we discussed anything that would be subject to attorney/client privilege."[60]  As such, Plaintiff asserts the burden and expense of the additional discovery requested outweighs its benefit under Rule 26.  Plaintiff further asserts that extensive discovery has already been conducted in this matter, as Plaintiff has submitted four sets of answers to Defendants' interrogatories, six sets of responses to Defendants' requests for production of documents and that twelve depositions have been taken, eleven of which were taken by the Defendants.[61]

### B.  Law and Analysis

Federal Rule of Civil Procedure 16(b) provides that scheduling orders, "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  The Fifth Circuit has explained that, "[t]he good cause standard requires the 'party seeking relief to show that the

---

[59] R. Doc. 136 at p. 1.
[60] R. Doc. 136 at p. 4 (*citing* R. Doc. 130-2 at p. 17).
[61] R. Doc. 136 at p. 2.

deadlines cannot reasonably be met despite the diligence of the party needing the extension.'" *S & W Enterprises., L.L.C. v. SouthTrust Bank of Ala., NA*, 315 F.3d 533, 535 (5th Cir. 2003) (*quoting* 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1522.1 (2d ed. 1990)). In the context of an untimely motion to submit expert reports, designate experts, or amend the pleadings, the Fifth Circuit Court of Appeals applies the following four-factor balancing test to determine whether good cause exists: (1) the explanation for the failure to adhere to the deadline at issue; (2) the importance of the proposed modification to the scheduling order; (3) potential prejudice; and (4) the availability of a continuance to cure such prejudice. *Hernandez v. Mario's Auto Sales, Inc*., 617 F. Supp. 2d 488, 493 (S.D. Tex. 2009); *See, Reliance Ins. Co. v. La. Land & Exploration Co*., 110 F.3d 253, 257 (5th Cir. 1997) (submit expert reports); *Geiserman v. MacDonald*, 893 F.2d 787, 790 (5th Cir. 1990) (designate expert witnesses); *S & W Enterprises*, *LLC*, 315 F.3d at 536 (amend the pleadings). At least one other court in this Circuit has applied the four-factor test to a motion to reopen discovery. *Hernandez*, 617 F. Supp. 2d at 493; *See also, United States v. McFerrin*, Civ. A. No. H-95-3730, 2007 WL 4353709, *1 (S.D. Tex. Dec. 11, 2007) (citing *Southwestern Bell Tel. Co. v. City of El Paso*, 346 F.3d 541, 546 (5th Cir. 2003)).

With respect to the first factor, the explanation for Defendants' failure to adhere to the May 26, 2017 discovery deadline in the Court's Amended Scheduling Order,[62] Defendants assert that they first learned about the meeting between DeJean and Plaintiff's counsel "just prior to the

---

[62] R. Doc. 63 at p. 1. Defendants consistently refer to the discovery deadline in this case as August 25, 2017. Such references are in error. A review of the record shows that on May 23, 2017, the undersigned issued a Telephone Conference Report and Order extending the May 26, 2017 discovery deadline until August 25, 2017 for the limited purpose of allowing Defendants to take the continuation of Plaintiff's deposition and to conduct additional reasonable discovery that arose out of the deposition. R. Doc. 94 at p. 2. It is clear from the instant Motion to Re-Open Discovery that the additional discovery requested by Defendants did not arise out of the continuation of Plaintiff's deposition on August 2, 2017, and instead relates to the testimony elicited from DeJean on September 12, 2017. Thus, the August 25, 2017 discovery deadline does not apply to Defendants' request to reopen discovery.

*Gilmore* trial on July 24, 2017," and that they immediately scheduled DeJean's deposition.[63] Defendants assert that the deposition was rescheduled for September 12, 2017 because counsel for both parties had a conflict with the original deposition date. However, no information is provided regarding the original proposed date for DeJean's deposition. Plaintiff asserts that Defendants offer no valid explanation for their failure to adhere to the discovery deadline, pointing out that Defendants have had a copy of the purported transcript of the text messages between DeJean and Gilmore since January 21, 2016.[64]

Although Defendants acknowledge that the issue of whether DeJean shared privileged information with Plaintiff's counsel first arose when the *Gilmore* matter went to trial on July 24, 2017,[65] which occurred after the close of discovery on May 26, 2017,[66] Defendants offer no explanation as to why they did not immediately file a motion to modify the Amended Scheduling Order in this case to obtain additional discovery on that issue. It is unclear why this issue was not immediately raised in this case, especially in light of Defendants' assertions that, "the instant case is closely related to the *Gilmore* matter," and that, "the facts of this matter and those of the *Gilmore* matter are closely intertwined."[67] Defendants' acknowledgment also undercuts any assertion that they did not learn that Plaintiff's counsel may have obtained privileged information from DeJean until DeJean's deposition on September 12, 2017. Further, *Defendants* have submitted evidence showing that they received a transcript of the text messages purportedly exchanged between Gilmore and DeJean in October 2012, which concern the *Gilmore* matter, as early as January 21, 2016.[68] However, Defendants did not file the instant Motion to Reopen Discovery until October

---

[63] R. Doc. 130-1 at p. 7.
[64] R. Doc. 136 at p. 4 (*citing* R. Doc. 130-7).
[65] R. Doc. 130-1 at p.2 (*citing* R. Doc. 264 in the *Gilmore* matter).
[66] R. Doc. 63 at p. 1.
[67] R. Doc. 141-1 at pp. 1 and 2.
[68] *See*, R. Doc. 130-7.

26, 2017, over a month after DeJean's September 12, 2017 deposition, three months after the issue arose in the *Gilmore* matter and over a year and half after receiving the transcript of the text messages allegedly exchanged between Gilmore and DeJean. While Defendants offer a valid explanation for their failure to adhere to the May 26, 2017 discovery deadline, Defendants offer no explanation for the lengthy delay in seeking an extension of the deadline to conduct discovery regarding whether Plaintiff's counsel sought and obtained privileged information from DeJean. As such, this factor weighs slightly in favor of the Defendants.

Turning next to the second factor of the good cause analysis, the importance of the additional discovery requested, it does not appear that the additional discovery requested by Defendants is important to this case or the claims and defenses raised by the parties. Defendants assert that it is important that they be allowed to depose Plaintiff's counsel and/or obtain all files in Plaintiff's counsel's possession regarding DeJean because without that information, Defendants may be unfairly prejudiced in their ability to adequately present a defense.[69] Plaintiff asserts that Defendants have failed to state any facts regarding the importance of reopening discovery. Importantly, as Plaintiff points out,[70] Defendants do not allege how the information and documents sought by the additional discovery would support a defense of Hebert or the ATC against Plaintiff's invasion of privacy, defamation and retaliation claims. It is difficult to imagine a scenario in which the additional discovery sought by Defendants could be important in this case if Defendants cannot even articulate a basis for how the information and documents may be relevant to the claims and defenses in this case. Defendants offer only a vague assertion that they may be unable to prepare an adequate defense and may be "subjected to trial by ambush" without the

---

[69] R. Doc. 130-1 at p. 8.
[70] R. Doc. 136 at p. 2.

requested information.[71]  These assertions, however, do not state any facts regarding how the additional discovery requested is important in this case.  As such, this factor weighs against the Defendants.

With respect to the third and fourth factors, whether Plaintiff will be prejudiced by the additional discovery and the availability of a continuance to cure any such prejudice, Defendants assert that Plaintiff will not be prejudiced by a short delay in reopening discovery, especially since any such prejudice would be a consequence of Plaintiff's own actions.[72]  In contrast, Plaintiff asserts that he will be prejudiced if the additional discovery is allowed because it will increase the costs of litigation, including attorney's fees and the costs associated with taking additional depositions.  Although Defendants assert the additional discovery will cause only a "short delay in re-opening discovery," Defendants do not request a particular amount of time in which to conduct the additional discovery, which would include taking the depositions of Plaintiff, J. Arthur Smith, III and Charles Gilmore, nor do Defendants address the impact of the additional discovery on the remaining pre-trial deadlines.[73]  Notably, nearly all of the pre-trial deadlines, including the deadline for filing dispositive and *Daubert* motions, expired prior to Defendants filing the instant Motion to Re-Open Discovery.[74]  In addition to increasing the costs of litigation, granting Defendants' request to reopen discovery in this case would affect the remaining pre-trial deadlines in this case, as well as the July 30, 2018 trial date.[75]  While granting a continuance of the remaining pre-trial deadlines and the trial date, as well as the deadline for filing dispositive and *Daubert*

---

[71] R. Doc. 130-1 at pp. 8 and 11.

[72] R. Doc. 130-1 at p. 8.

[73] At the time Defendants filed the Motion to Re-Open Discovery on October 26, 2017, the final pretrial order was due on January 19, 2018 and the final pretrial conference was set for February 16, 2018.  R. Doc. 63 at pp. 1-2.  At the request of the parties, District Judge John W. deGravelles subsequently extended the deadline for submitting the final pretrial order to February 2, 2018 (R. Doc. 155) and then to February 8, 2018 (R. Doc. 157).

[74] *See*, R. Doc. 63.

[75] *See*, R. Doc. 163.

motions, could cure some of the prejudice caused by reopening discovery in this case, any such continuance would not cure the prejudice caused by the increased costs of litigation that will result if additional discovery is permitted. As such, the third and fourth factors weigh against the Defendants.

Based on the foregoing, Defendants have not shown that good cause exists to modify the Amended Scheduling Order to extend the May 26, 2017 discovery deadline[76] to allow additional discovery regarding whether Plaintiff's counsel sought and obtained privileged information from Brian DeJean regarding the Defendants. As such, the Motion to Reopen Discovery is denied.[77]

## IV. CONCLUSION

For the reasons set forth herein, **IT IS HEREBY ORDERED** that Defendants' Motion for Contempt of Court[78] is **DENIED.** As such, **IT IS HEREBY ORDERED** that Defendants' request for sanctions under Fed. R. Civ. P. 37(b)(2)(A), including the reasonable attorney's fees and costs incurred in filing the Motion for Contempt of Court, is also **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Re-Open Discovery for Limited Purposes[79] is **DENIED.**

Signed in Baton Rouge, Louisiana, on April 10, 2018.

ERIN WILDER-DOOMES
UNITED STATES MAGISTRATE JUDGE

---

[76] R. Doc. 63 at p. 1.
[77] Because Defendants have not shown good cause to modify the Amended Scheduling Order, the undersigned does not reach the specific arguments raised by Defendants in support of their request to depose Plaintiff's counsel and to obtain all of the information in Plaintiff's counsel's files that pertain to Brian DeJean. *See,* R. Doc. 130-1 at pp. 8-12.
[78] R. Doc. 125.
[79] R. Doc. 130.